No. 34.—CHARLES J. McDONALD, Governor, &c. for the use of AVERA BUCKNER, plaintiff in error *vs.* ELIJAH BRADSHAW and others, defendants in error.

[1.] Where the old Sheriff fails to deliver to his successor an execution placed in his hands during his term of office, and receives money thereon fourteen days after the appointment and qualification of the new Sheriff, his securities are not liable, in an action on the bond, to account to the defendant for said money, notwithstanding he has been compelled to pay it a second time to the plaintiff.

Covenant upon Sheriff's Bond.    From Monroe Superior Court. Tried before Judge FLOYD.    September Term, 1846.

For the facts, see the opinion of the Supreme Court.

STARK, KING & GORDON, for plaintiff.

PINCKARD, for defendants.

*By the Court*—LUMPKIN, J. delivering the opinion.

This was an action of covenant on the official bond of Elijah Bradshaw, the late Sheriff of Monroe County, and his securities. The breach assigned was, that fourteen days after Bradshaw's term of office had expired by the appointment and qualification of his successor, instead of turning over to his said successor, by schedule and indenture, an execution in favour of Jefferson J. Lamar, against Avera Buckner and others, which had been placed in his hands five months previously, but had remained unexecuted, he wrongfully withheld the *fi. fa.* and received a large part of the money due thereon from the defendant, and failed to account for the same; and that, by reason thereof, Buckner was compelled to pay to the plaintiff the debt a second time.    Judge Floyd awarded a non-suit, upon the ground that Buckner, having paid the money voluntarily to Bradshaw when he was out of office, and consequently when he had no right to receive it, that he could not sue the *securities* on the bond to recover it back.    To this judgment the plaintiff below excepted.

Was the Court right in awarding a non-suit?

[1.] Either Bradshaw, the old Sheriff, had the right to collect the debt, or he had not.    If he had the right, the payment to him by Buckner was a discharge of the execution; and notwithstand-

McDonald *vs*. Bradshaw.

ing he may have been compelled to pay it a second time, the order to do so was illegal, and consequently the Sheriff's securities cannot be made to suffer. If, on the other hand, Bradshaw had no right to receive the money, then the payment by Buckner was *voluntary*, and the securities are exempt. In any view therefore of this case, the point to my mind is a plain one.

By the 48th section of the Judiciary Act of 1799, *Prince* 217, the old Sheriff is required at the expiration of his office, to turn over to his successor, by indenture and schedule, all writs and processes which shall remain in his hands unexecuted; and should he neglect or refuse to do so, he is liable to make satisfaction in damages to the party aggrieved.

This provision is vitally important to plaintiffs; for, by detaining writs and other process, debtors might escape or remove their property, and the party be left remediless. We do not perceive, however, that *defendants* could be injured by such default.

It is said in the argument, that but for the bond, Bradshaw could never have obtained the custody of this *fieri facias*, under color of which he inflicted this wrong. The answer to this is, that the securities undertook for the acts of Bradshaw done as Sheriff, and not for his larcenies, assaults and batteries, and other private misconduct. Suppose he had purloined the paper from his successor's possession, and the defendant had paid it ignorantly, as he is alleged now to have done, would it have been pretended that the securities would be responsible ?

In Brewer *vs.* Knapp, et al. 1 *Pick. R.* 332, a landlord, by indenture, leased a house for one year to a principal and securities. The principal entered, and continued to occupy after the term had expired; held by the Supreme Court that the securities were not liable for rent accruing after the end of the term. And yet, but for them, the tenant could not have got possession of the premises. They were bound for one year, and they could not be made answerable for the rent of a longer term.

And this constitutes the conclusive defence to the action. The undertaking of securities is one *stricti juris*, and they cannot be bound beyond the terms of their contract. *Walsh* vs. *Bailie*, 10 *Johns*. 180, *et passim*. Here the obligation, on the part of the securities, was for the faithful performance of Bradshaw's duty as Sheriff, *during his continuance in office*. How long was that ? *until his successor was qualified*. The record shows that this payment was made *fourteen days* thereafter. Whatever may be the English

32

law relative to the power of Sheriffs over unexecuted process in their hands, it is clear, by reference to our statutes, that in this State the functions of the Sheriff terminate with the *qualification* of his successor. The *new* Sheriff is empowered and required to sell and carry into effect every levy made by his predecessor, in like manner as the predecessor could have done *had he continued in office.* And further, it is made his duty to make titles to property sold under execution by the old Sheriff, where no conveyance had been executed. By another act, and it seems to have been deemed necessary to pass a statute for this purpose, Sheriffs are required to perform the duties of their office, during the time intervening between the election and commissioning of their successors. But what is still more conclusive upon this point, it is made penal for the former Sheriff wilfully to detain from his successor any records, papers, documents, books, or other writings appertaining or belonging to the office.

I assume it, then, as incontrovertible, that the lawful custody of this execution ended with the qualification of Bradshaw's successor. And if so, it follows as a legal corollary, that the liability of the securities could not extend to any act *done* or *omitted* after that time.

This doctrine was most elaborately discussed by the present Chief Justice of the United States, and the first talent of the Baltimore bar, in the great case of the *Union Bank of Maryland* vs. *Ridgley,* 1 *Har. & Gill,* 432; where an attempt was made to charge the defendant as security to one Higginbotham, the cashier. When the bond was given, the charter was limited in its duration to a certain period, which was subsequently extended by the Legislature, and the question was whether the surety could be made liable for any delinquency which occurred after the 6th of February, 1817, the day fixed at the date of the bond, for the expiration of the corporation. The Court decided, that the security was not responsible for subsequent defalcations, although bound generally for the acts of the cashier. "In construing this bond," says the Court, "we must look to the intention of the parties at the time it was executed; and that must be found in the original act of incorporation; and looking to that act, it would seem to be very clear that no responsibility was contemplated beyond the period of its duration; there was no idea *then* of carrying it any further; the parties contracted with a view to that duration and their agreement must be expounded accordingly. If the defendant had been asked at the time of executing the bond,

whether he would be willing to become security for Higginbotham for any length of time to which the charter might be extended by the Legislature, of which it was a creature, it may be that he would have assented to it; but it is by no means evident that he would; and we are not to speculate on what he might have been willing to do; we can look only to what he did."

So in *South Carolina Society* vs. *John Johnson, Jr.* 1 *McCord*, 41, the Court held, that where an officer is elected *annually* and gives a bond for the faithful discharge of his duties, his *securities* are bound *only for one year*, although there is no time specified in the bond, and although he should be re-elected several years in succession.

Justice Nott, in delivering the opinion of the Court, says: "It does not appear upon the face of the bond, for how long a time its obligation was intended to continue. But its object appears to be to secure the faithful performance of Mr. Trezvant's duties as Treasurer of the South Carolina Society—*the duration of the bond therefore must be determined by the duration of the office.* By reference to the rules of the Society, it appears that the Treasurer was elected only *for one year, the legal operation of the bond therefore cannot be carried beyond that period.*"

In the case of the *United States* vs. *Nicholl*, 12 *Wheat. R.* 505; the Supreme Court held that the sureties of Robert Swartwout as Navy Agent, were not responsible for moneys placed by the government in the hands of the principal, *after the legal termination of his office*, but that they were liable for moneys which came into his hands while in office, and which he subsequently failed to account for and pay over.

It has been suggested in argument, inasmuch as Bradshaw had made himself liable to Lamar by failing to collect the execution, ample time having elapsed to do so before his retirement, that had not Buckner paid the plaintiff, the securities would have been responsible to do so, and that consequently they are not damnified. Upon examination this position is untenable. Had Lamar proceeded against Bradshaw, the latter would have had resourse over against Buckner, and that would have terminated the case. So that in any view that can be taken of the matter, both upon principle and authority, the opinion below was right. That Buckner will sustain loss, if Bradshaw is unable *individually* to respond to him, is possible, still we can do nothing for him. It is *damnum absque injuria.* Judgment confirmed.