ROWE *v*. TUCK *et al.*

1. Where one is elected to a municipal office by the mayor and council for a term ending on a specified date, and is thereafter re-elected for another term, and continues, after the date of expiration of the first term, to perform the duties of the office, his omission to take the oath of office for the new term is a mere irregularity, unless there is a refusal of such character as will constitute a declination of the new term.

2. After the beginning of such new term, under the facts of this case, the performance of the duties of the office as above stated will be construed as falling within the new term.

3. Where the statute creating such office provides: "Nor shall any person acting as recorder of said court be eligible to any other office in the City of Athens during the term of his office as recorder," such officer is ineligible to any other office in such city during the term for which he has been chosen; and his resignation can not affect such ineligibility. The court did not err in rendering a judgment accordingly.

No. 1224. APRIL 18, 1919. REHEARING DENIED MAY 15, 1919.

Quo warranto. Before Judge Cobb. Clarke superior court. October 14, 1918.

*Blanton Fortson, Frank C. Shackelford,* and *Thomas J. Shackelford,* for plaintiff in error. *Wolver M. Smith,* contra.

GILBERT, J. Tuck et al., citizens and taxpayers of the City of Athens, instituted quo warranto proceedings, alleging that H. J. Rowe, who was elected by the mayor and council of said city on August 7, 1918, a member of the civil service commission of said city for a term of six years, was disqualified to hold that office, because at the time of his election thereto he was the duly elected

recorder of the city for a term expiring July 1, 1919, and that the act creating the office of recorder provided that the person holding that office should be ineligible to hold any other municipal office. The prayer is that Rowe be required to show cause why he should not be ousted from the office of civil service commissioner, and that the same be declared vacant. The respondent shows by his answer, that he was first elected recorder on December 5, 1917; that while he was again elected to this office on July 10, 1918, he continued to act under his first election, and had failed to qualify and take the oath as required by law, or to accept the office under the election of July 10, 1918; that prior to August 7, 1918, he had tendered to the mayor and council his written resignation of the office of recorder, which had been accepted, and that his term of office as recorder had expired. A judgment of ouster was rendered.

The distinguished trial judge filed with his judgment an opinion correctly stating the principles which this court believes to be controlling as to the issues. The following portion of the opinion of Judge Cobb is adopted as our own: "The controlling issue in this case is, was the respondent eligible to election as civil service commissioner during the period from July 10, 1918, to July 10, 1919, the undisputed fact being that he was elected such civil service commissioner on August 7, 1918, during the period named but after he had resigned the office of recorder.

"It has been the established policy of the law since the foundation of this government that legislators in office should not be elected to offices created, or offices of which the emoluments have been increased during the time that such legislators were in office. This policy finds expression in the constitution of the United States, in this language: 'No senator or representative shall, during the time for which he was elected, be appointed to any civil office under the authority of the United States which shall have been created or the emoluments whereof shall have been increased during such time.' (Hopkins' Code, 6640.) The policy of the law as expressed in our own State constitution is broader in prescribing ineligibility to office than that in the Federal constitution. The language of our own constitution is: 'Nor shall any senator or representative, after his qualification as such, be elected by the General Assembly, or appointed by the Governor, either with or

without the advice and consent of the Senate, to any office or appointment having any emolument annexed thereto during the time for which he shall have been elected.' (Hopkins' Code, 6420.) The evil that was intended to be remedied by the provisions in the two constitutions above quoted was to prevent a legislator in office from using the environment, influence, and prestige of the office which he held to create for his benefit another office, or to increase for his benefit the emoluments of an existing office. A similar policy is found in our statute in reference to municipal officers, and the statute extends the policy of the law broader than the constitutional provisions. The statutes of this State provide that 'Councilmen and aldermen of the towns and cities of this State shall be incompetent to hold, except in towns of less than two thousand inhabitants, any other municipal office in the said towns and cities during the term of office for which they were chosen; provided, nothing herein shall render them ineligible to be elected during said term to serve in a term immediately succeeding said term; but nothing in this section shall apply to any municipal office which is filled by appointment of the mayor.' Hopkins' Code, 886.)

"The provision in the act of 1913, creating the office of recorder, that the recorder should not 'be eligible to any other office in the City of Athens during the term of his office as recorder,' is in line with the established policy referred to in the constitutional and statutory provisions above referred to. The statute in reference to councilmen and aldermen, above referred to, was under construction in the case of *Crovatt* v. *Mason,* 101 *Ga.* 246 [28 S. E. 891]; and it was there held that a charter of a municipal corporation, providing that 'the mayor and aldermen shall hold their offices for two years, or until their successors are elected and qualified,' fixes the terms of such officers at two years. The term of one of such officers is not reduced or changed by his resignation of the office and the election of his successor before the expiration of two years from the beginning of such term. It seems that this decision is controlling in principle in the present case. The term of office of the recorder is one year; therefore the term of office of the respondent as recorder was from July 10th, 1918, to July 10th, 1919, and his term could not be reduced by his voluntary resignation, effective either August 7th, 1918, or Sep-

tember 1st, 1918. It is contended, however, that the act creating the office of civil service commissioner was not in existence at the time of the passage of the act creating the office of recorder, and therefore that the office of civil service commissioner was not in the legislative mind as an office which the recorder was ineligible to hold during the term of his office. The language of the act creating the office of recorder is that the recorder shall not be 'eligible to *any other office in* the City of Athens during the term of his office as recorder.' This language is broad enough to include not only offices which were then in existence but municipal offices that might be thereafter created. The purpose of the ineligibility provision in the recorder's act was not to prevent a person from holding two offices at the same time, but its purpose was to prevent one in office with a fixed term from holding another municipal office during that term. It is also contended that the language of the ineligibility clause of the act creating the office of recorder uses the expression 'his office as recorder,'—the contention being that the use of the personal pronoun 'his' makes the office subject to the control of the incumbent, and that when he relinquishes *his* office by resignation his term ends. It may be that resignation ends the tenure, but it does not end the term. The term is fixed by statute. The tenure of the office, using this expression as indicating the actual holding of the office, may be terminated at the will of the incumbent. But I think that this construction places too much emphasis on the use of the personal pronoun preceding the word office. It may be that the use of the personal pronoun, which is common in legislation in such matters, is unhappy. Much legislation is crude in expression, but the courts must determine the legislative mind from the context and contemporaneous and antecedent history. The use of the personal pronoun in legislation, as it appears in the act under consideration and in similar acts, must be treated as impersonal, if there can be such a thing as the impersonal use of a personal pronoun. Of course the particular individual who might hold the legislative office is never in the legislative mind. If the ineligibility clause is construed to mean that the recorder may at any time resign his office as recorder and accept another office, then the General Assembly has done a vain thing; for no legislation was necessary on this subject. Any officer may resign his

office at any time, unless restrained by constitutional or statutory provisions; and for the legislature simply to declare that the recorder could at any time resign his office was a work of supererogation, for this right existed independent of the act in question. It is to be presumed that the legislature intended something when they placed this provision in the act, and that something can reasonably be construed to be only that the recorder of the City of Athens shall not be elected to any other municipal office during the time fixed as the term of office of the recorder. This crudity in legislative expression should not lead the courts into an error of interpretation which will entirely defeat the legislative will.

"It is further contended, as the respondent did not take the oath of office upon his election to the full term, that he was on the date of his resignation simply holding over until his successor was elected and qualified. The oath of office of recorder had been duly administered to the respondent when he was elected to the unexpired term, and the failure to administer the oath upon his election to the full term was a mere irregularity and did not interfere with his serving under his new term, especially when it appears that he continuously discharged the duties of recorder and received the compensation fixed by law for the services required of him as a public officer. It does not now lie in his mouth to say he has never accepted the office for the reason that through oversight or inadvertence the mayor failed to administer the oath of office to him. He was a de jure officer, it is true, holding over. Even if he had not been re-elected, he was certainly a de facto officer as to the full term, and all of his official acts were valid, even though he had taken no oath of office at the beginning of the new term. It certainly cannot be that the mere failure of a public officer to take the oath of office at the beginning of a term which he is actually entitled de jure to serve, and for which he receives compensation, will have the effect to destroy the provisions of an act providing that during such term he shall not be elected to another office. If such is the law, the entire purpose of the General Assembly may be defeated at any time by an incumbent, who is re-elected, merely failing to discharge a duty which the law imposes upon him to take an oath upon the beginning of his new term. This would permit an officer to entirely defeat the legislative will and take advantage of his own failure of official duty."

*Judgment affirmed. All the Justices concur.*