CENTURY INDEMNITY COMPANY *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

No. 9146.  OCTOBER 15, 1932.

*Bryan, Middlebrooks & Carter,* for plaintiff.

*Little, Powell, Reid & Goldstein* and *J. H. Therrell,* for defendant.

GILBERT, J.  Cole was elected treasurer of Webster County for two terms of four years each, the first beginning January 1, 1925, the second beginning January 1, 1929.  Three bonds for the faithful performance of his duties were made.  The first bond, for $10,000, was dated January 1, 1925, and covered the first term of four years for which Cole had been elected.  Fidelity & Deposit Company of Maryland was surety upon that bond.  After re-election to the office for the term beginning January 1, 1929, and ending December 31, 1932, Cole qualified by taking the oath for that term on March 13, 1929, and on the same day bond for the faithful performance of his duties, in the sum of $10,000, was made with Century Indemnity Company as surety.  On April 16, 1929, the bond dated March 13 was surrendered and canceled, and the third

bond dated April 13, 1929, for $20,000, with Century Indemnity Company as surety, was executed, the county commissioners having, on April 2, 1929, required an increase in the amount of the bond.

On March 29, 1929, Bank of Weston, in which Cole kept funds of the county on deposit, failed. At that time Cole had on open account with the bank $672.28 of county funds, and also had a time certificate of deposit of $5,878.96, dated December 31, 1928, payable twelve months after date. The money covered by the certificate was deposited for the purpose of providing a sinking-fund for bonds which had been issued by the county for the construction of a court-house. The last money deposited under this certificate was "in January and February of the year 1928." On May 15, 1929, execution was issued by the county commissioners against Cole as principal, and Century Indemnity Company as surety, for the aggregate amount of the two deposits mentioned, plus interest. Century Indemnity Company recognized its liability for the amount covered in open account. It denied liability for the amount covered by the time certificate of deposit, and alleged "that the liability for said sum should fall on . . the Fidelity & Deposit Company of Maryland, for the reason that" it "was surety on the bond at the time when said funds were deposited under the time certificate of deposit;" that "the deposit of the funds of Webster County under a time certificate of deposit . . was an unauthorized investment and conversion of the funds of the County of Webster upon the date of the deposit of said funds under a time certificate;" that "default upon the part of . . Cole as county treasurer, with respect to said funds represented by said time certificate of deposit, occurred on or before December 31, 1928, at a time when the Fidelity & Deposit Company of Maryland was surety upon the bond," and prior to the time when Century Indemnity Company became surety, and that "if it be held that the Fidelity & Deposit Company . . is not primarily responsible for the loss, contrary to the contentions of the plaintiff, nevertheless the loss of $5952.11 should be borne equally by the plaintiff and the Fidelity & Deposit Company . . as cosureties for the alleged loss." In order to avoid incurring the penalty provided by law, the two surety companies agreed that the full amount of the money should be paid by the Century Indemnity Company, and that the question of liability should be litigated be-

tween the two sureties. All claims of the county against Cole and against the assets of the Bank of Weston were transferred to the Century Indemnity Company.

To the petition of the Century Indemnity Company alleging these facts the Fidelity & Deposit Company demurred on the grounds: (1) That it did not set out a cause of action. (2) That from the allegations it appears that the default occurred after the term during which the Fidelity & Deposit Company was surety and at a time when the Century Indemnity Company was liable. (3) That from the allegations it appears that the "time certificate referred to could not, as a matter of law, have been made to mature beyond the term of . . Cole . . and that therefore said funds represented by it were available and on hand to the credit of . . Cole up to and through December 31, 1928; and it further appears that . . Cole succeeded himself as county treasurer, and therefore received said funds, and that any loss or default in respect thereto occurred after January 1, 1929," and that therefore the Century Indemnity Company, and not the Fidelity & Deposit Company, was liable therefor. (4) That no breach by Cole of his official duty during the term for which Fidelity & Deposit Company was surety was alleged or shown. (5) That none of the allegations were sufficient to charge Fidelity & Deposit Company with liability either primarily or secondarily or as cosurety with respect to the alleged default of Cole. Error is assigned upon a judgment sustaining these demurrers and dismissing the petition.

Counsel for the plaintiff in their brief make the following statement: "The single question . . is as to whether the Century Indemnity Company or the Fidelity & Deposit Company of Maryland should bear the loss sustained by Webster County as the result of the loss of the county sinking-funds which were deposited in the Bank of Weston under a time certificate of deposit by W. W. Cole, the county treasurer, or as to whether the two companies were both responsible for the loss and should share the loss equally as cosureties." Counsel for the defendant in their brief say: "The sole question presented in this case is whether the alleged official delinquency or default of the county treasurer occurred during the term 1925-1929, or during the term 1929-1932." In order to determine either of these questions, several principles of law must be considered and determined as to their application to the ques-

tions involved. We think it may be said with certainty that the liability of the one or the other of the surety companies must be determined by the time when the delinquency or default occurred. It can readily be agreed with the defendant in error that if the delinquency or default occurred during the term of 1925-1929, the Fidelity & Deposit Company of Maryland is bound therefor; and if it occurred during the term 1929-1932, the Century Indemnity Company would be bound under the bond executed by it. However, there must first be determined the exact period of time which is covered by these terms of office. For instance, both bonds must be considered in the light of the statutes of this State applicable to such bonds. The Civil Code (1910), § 564, as changed by constitutional amendment (Ga. L. 1914, p. 43), provides: "County treasurers are elected . . and hold their offices for four years and *until their successors are elected and qualified.*" Section 565 provides: "No appointment or election is effectual until bond and security is given and oath of office taken." See also, as to the penalty, Penal Code §§ 273, 275. Section 572 of the Civil Code provides: "When any official bond is executed by any county treasurer, or any person acting as such, the property of said treasurer, or any person so acting, as well as the security or securities on said bond, shall be bound *from the time of the execution thereof,* for the payment of any and all liability arising from the breach of said bond." These sections are made to apply expressly to county treasurers. It follows from section 564 that the county treasurer qualified and holding office for the term beginning January 1, 1925, continued to hold office until his successor, although the same individual, had *qualified.*

According to the record, the treasurer re-elected for the new term beginning January 1, 1929, did not qualify by giving the bond and security and taking the oath of office until March 13, 1929; so necessarily Cole, who had been elected treasurer for the term beginning January 1, 1929, did not begin to perform the duties of that office under the law for the new term until March 13, 1929. This is true notwithstanding the fact that the bond recited that it was to cover the term of four years beginning January 1, 1929. Such recital merely describes the term for which Cole was elected. The bond was, of necessity, executed with reference to the code sections just quoted, and can not change the law of Georgia as to when the

county treasurer assumed and began to perform the duties of the office for the term. This ruling, however, does not settle the question. It merely rules upon one of the contentions of the defendant. It does not determine the final question of liability. We agree with the defendant that, with the above qualification, the liability between the two surety companies must be determined by ascertaining whether the delinquency or default occurred during the one term or the other. That is, if it occurred during the period of time which we hold the first bond covered, between January 1, 1925, and March 13, 1929, the Fidelity & Deposit Company of Maryland is liable. If the delinquency or default occurred after he gave bond and qualified on March 13, 1929, the Century Indemnity Company is liable. "'The general rule is that sureties are liable only for a breach of official duty committed by their principal during the term of office for which the bond was given' (28 Cyc. 474, d) ; but under the Georgia statute all officers of this State must 'discharge the duties of their office until their successors are commissioned and qualified.' Civil Code (1910), § 261. The effect of this statute is to extend the term of office under the original appointment until a successor has been qualified, with the further effect that liability on such a bond continues where an official elected for a fixed period thereafter holds over, after its expiration, until his successor is appointed. *Mayor &c. of Cuthbert* v. *Brooks,* 49 *Ga.* 179 (3) ; *McDonald* v. *Bradshaw,* 2 *Ga.* 248 (46 Am. D. 385)." *City of Elberton* v. *Jones,* 35 *Ga. App.* 536 (133 S. E. 745). · In that case the term stated in the bond had elapsed, and the city treasurer who gave the bond was serving a subsequent term, and had not given another bond or taken another oath of office. It did not appear that the city council had required him to do so. The Court of Appeals, on authority of *Rowe* v. *Tuck,* 149 *Ga.* 88 (99 S. E. 303, 5 A. L. R. 113), held that the failure to take the oath of office and to give a bond for the subsequent term was "a mere irregularity," and that the sureties in the original bond were not liable for the defalcation after the date of expiration stated in the bond had expired. To determine when the default occurred, we must first find, according to our law, what constituted the default. Did the deposit on time certificate with the bank constitute a default, or did the failure of the treasurer to pay over the amount of money which he was due to the county as treasurer, when called

upon, constitute the default? It is insisted by the plaintiff that the time deposit was unlawful, unauthorized, amounted to a conversion, and constituted a default on the part of the county treasurer. On that question a number of authorities from foreign jurisdictions are cited, as well as *Lamb* v. *Dart*, 108 *Ga.* 602 (34 S. E. 160), and Ga. Laws 1917, p. 199, Michie's Code, § 578(1). That act provides that county treasurers are "authorized" to deposit, in any bank or banking institution which has been designated by law as a depository for the funds of the State, the county funds which may come into their hands as county treasurers. It also provides that any depository of the State funds so selected by the county treasurer to be a depository of the county funds shall, in addition to the bond given to the State as security for the money of the State deposited in said bank, give to the county treasurer a bond sufficient in amount to protect him from any loss, which bond shall be payable to him, and shall be conditioned to fully account to him for all county moneys deposited by him as such county treasurer.

The act of 1924 (Ga. Laws 1924, p. 86; Michie's Code, § 467(3)) also provides that funds collected for the purpose of payment of principal and interest of bonded indebtedness under the constitution "may" be invested in valid outstanding bonds of such county or some other county of the State, which have been duly validated, or valid outstanding bonds of the State of Georgia or of the United States, etc. It must be observed that neither of these provisions makes their requirements absolute. County treasurers may follow the provisions of either of these statutes, and thereby become absolutely safe from loss, as well as making safe the public funds with which they are entrusted. However, so far as we are aware, he may keep the funds in his own possession so long as he is prepared to pay them out when lawfully authorized and required so to do. In *Lamb* v. *Dart,* supra, where the deposit was on general account and not on time certificate, this court said: "With the safe custody of the public money that went into his hands he, and he alone, was intrusted. There is no authority whatever for his making any other person or corporation the custodian of the fund. . . The bank was even under no obligation to keep that fund separate and to itself as specific property belonging to the county, or to its treasurer. It could appropriate it to the payment of checks

drawn upon the bank, and could otherwise use it in the course of its legitimate business. Such general deposits in bank really create the relation of debtor and creditor between the bank and the depositor. It therefore simply amounts to a loan to the bank. With the same reason might it be contended by a public official that he is relieved from liability for public funds in his hands because he loaned it to an individual in the utmost good faith, and with the honest belief that the borrower was perfectly solvent. Public policy will not tolerate such a defense by a public official. It is true the rule of law which is announced in this case may in some instances operate harshly, but a county treasurer when he accepts his office takes it with all of its responsibilities and its perils. Among these responsibilities is the safekeeping and the proper disposition of the county funds that go into his hands; and among the perils he assumes is the liability of its loss, whether he keeps it himself or deposits it in bank; and when it is lost, especially when the loss results from the failure of another with whom he has deposited the fund without authority of law, there has been a breach of his bond, and he is liable to the county for the loss." The question in that case was whether a county treasurer was liable for defalcation because of the failure to account for county funds which had been deposited in good faith in a bank believed to be and generally understood to be solvent. The question whether the deposit itself was a conversion was not involved. It does not necessarily follow that the county treasurer was guilty of a defalcation because he made a contract that was not expressly authorized by statute. We do not consider the language in *Lamb* v. *Dart,* where a deposit was referred to as "without authority of law," to mean that it was criminal, or a conversion amounting to a defalcation. We think the proper construction is that it merely meant that there was no statute in terms authorizing it, rather than being against the law in the sense of being a breach of duty or an official default. So far as we are aware, county treasurers in Georgia very generally deposit their public funds in bank as a convenient and safe method of handling. Such deposits have never been considered as amounting to a default. Notwithstanding such deposits, the treasurer and his bondsmen are liable if the funds are not forthcoming when officially required. *Lamb* v. *Dart,* supra. The fact that we are dealing with a deposit on time certificate does not alter the principle of law in-

volved. If, as contended by the plaintiff, a deposit on time certificate was unauthorized and unlawful, then the time element of the contract was not binding, and the treasurer could have demanded the return of the money immediately or at any time when required to do so by the county authorities. *Board of Commissioners of Floyd County* v. *Massachusetts Bonding and Insurance Co.*, 175 *Ga.* 584 (165 S. E. 828) was a case where the former county treasurer had delivered his bank check to his successor in office for the total amount due the county. The bank failed after delivery of the check; and the question was which was liable, the former treasurer or his successor, for the amount lost by the bank failure? In the decision it was said: "The mere fact that the bank was insolvent on the date of the delivery and acceptance of this check, and of its deposit to the credit of the new treasurer, would not establish a violation of the bond of the old treasurer as for a failure to account to his successor in office."

In some counties in this State the office of treasurer has been abolished, and in lieu thereof a depository or depositories have been established; as in Taylor County (see Ga. Laws 1916, p. 504). In that act, and we presume similar provisions are made in others, the county authorities are authorized to designate a bank or banks as depository or depositories, and such depository or depositories are required to furnish bonds, as in the case of county treasurers. In the act just mentioned the provision is: "The property of such bank, as well as the security or securities on such bond, shall be bound from the time of the execution thereof, for the payment of any and all liability arising from the date of said bond." Whenever depositories of that kind are selected in lieu of county treasurers, the bank or the depository receives the funds as any general deposit, and is at liberty to use the funds as other general deposits. The security for the public funds is dependent upon the solvency of the bank and the bond. The same is true in the case of an individual. The Civil Code (1910), § 298, declares: "Whenever any officer required by law to give an official bond acts under a bond which is not in the penalty payable and conditioned, nor approved and filed, as prescribed by law, such bond is not void, but stands in the place of the official bond, subject, on its condition being broken, to all the remedies, including the several recoveries, which the persons aggrieved might have maintained on the official bond." The sec-

tion just quoted, it may be said, speaking in a general sense, was enacted to prevent miscarriages of justice that might occur whenever such a bond is "not approved as prescribed by law." We do not agree with the defendant as to the construction of this section, that is, that the bond given by the Century Indemnity Company must necessarily cover the four-year period beginning Jan. 1, 1929; and we can not agree that that construction is required under the authorities cited, to wit, *County of Fulton* v. *Clarke,* 73 *Ga.* 665, and *Dedge* v. *Branch,* 94 *Ga.* 37 (20 S. E. 657). In each of those cases the defalcations occurred after the bond was executed. The question in both cases was whether a bond executed after the date specified by law for the term to begin was binding as a bond to make good the amount of the defaults.

The plaintiff cites, for the contention that the deposit on time certificate was a conversion and a breach of the bond, *Hogansville Banking Co.* v. *Hogansville,* 156 *Ga.* 855 (120 S. E. 604) ; *Mathews* v. *Darby,* 165 *Ga.* 509 (5) (141 S. E. 304) ; *Town of Douglasville* v. *Mobley,* 169 *Ga.* 53 (149 S. E. 575). Those decisions dealt with the law in regard to funds of a municipality which are held as sinking-funds for the purpose of retiring bonds, as required by art. 7, sec. 7, par. 2, of the constitution (Civil Code (1910), § 6564). The law with regard to the investment of sinking-funds of a municipality differs from that in the case of funds held by a county treasurer. Under the act of 1910 (Ga. Laws 1910, p. 100; 1 Park's Code, § 467(a) ; Michie's Code, § 467(5)), the municipality is "required" to invest the funds as stipulated in that statute. No discretion is left to the municipal authorities. Under the statute with reference to county treasurers, shown in Michie's Code, §§ 467(3), 578(1), the county treasurers are "authorized" to or "may" invest or dispose of the funds as prescribed in those statutes. Consequently the decisions based upon laws applicable to municipalities are not, in every respect, applicable to the preesnt case. Moreover, the main question concerned the liability of banks, and was one of relative priority of claims against the bank.

It follows from the views expressed that we hold that no defalcation occurred until it became the official duty of the treasurer to pay over the funds held by him as treasurer. The record does not disclose the precise time at which the county commissioners called upon the treasurer for the funds. It does not appear from the

record, nor is there any contention, that the bank was insolvent on March 13, 1929. It does appear that execution was issued against him for the amount of the funds on May 15, 1929. It is perhaps a fair presumption that there was no call made upon the treasurer for the funds until after the failure of the bank on March 29, 1929. That failure occurred during the term for which the Century Indemnity Company was surety; that is, beginning on March 13, 1929. We are dealing with the case on demurrer; and if the facts were otherwise, this should have been made to appear by the Century Indemnity Company. This view of the question seems to be in harmony with justice and equity. When a security company agrees to execute a surety bond of a public officer, it has the opportunity and should avail itself of every means of ascertaining exactly what position that officer occupies with respect to public funds for which the company assumes liability. In the present case the Century Indemnity Company, we have no doubt, could easily have obtained the information that Cole, the treasurer, had deposited with the bank the trust funds which were subsequently lost by the failure of the bank. Having acquired that information, the company could have insisted, as a condition precedent to becoming surety, that the county treasurer repossess himself of that sum before executing the bond. The company could even have insisted that he invest the funds as authorized under either of the code sections cited above. Had it done this, its subsequent troubles would not have occurred.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent.*