## HANCOCK COUNTY et al. v. HANCOCK NAT. BANK OF SPARTA, GA., et al.

### No. 7094.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1933.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Hancock county, joined by Fidelity & Deposit Company of Maryland as an interested party, brought a bill against Hancock National Bank and its receiver to trace certain county funds placed officially by the county treasurer on general deposit in the bank during a period of six months before its failure, praying a lien on the assets in the receiver's hands and also general relief. It was alleged that the bank was a state depository and under the law of Georgia could be selected by the county treasurer to be a depository for county funds provided the bank gave a sufficient bond to account for the county money, but the bank had not given the bond and in consequence could not lawfully have taken the money, and thus became a trustee of it ex maleficio. It was alleged also that the bank officers in receiving the deposits knew the bank to be hopelessly insolvent, and because of this fraud the bank got no title to the funds deposited. The deposits amounted to more than $15,000. The bank on closing "had on hand $8,368.77, all of which passed into and is now,in the hands of the receiver," and the county claims the whole fund. On motion the judge dismissed the bill in so far as it claimed a lien based on the failure to give bond, and upon a hearing decreed against the claim of lien based on the fraudulent receipt of the deposits, but established a general claim for their amount. The judgment disallowing the first named claim is alone brought under review.

Under Georgia Civil Code, § 571, as amended by Laws 1918, p. 109, county treasurers give a bond payable to the ordinary of the county to protect the county from any loss. All county funds are to be paid to and disbursed by him. Section 574. Under these statutes prior to 1917 the treasurer and his bond were absolutely liable for the safety of the county money received by him unless the act of God or the public enemy might excuse the loss. There was no authority to deposit it in any bank except at his own risk. Lamb v. Dart, 108 Ga. 602, 34 S. E. 160. On the other hand, there was no law prohibiting his doing so. The Constitution, art. 7, § 9, par. 1, and Penal Code, § 197 and § 198, forbid him or any other officer personally to receive or agree to receive any interest or reward for the use, loan, or deposit of public money, but they do not forbid a deposit of it at the officer's risk. Compare Board of Com'rs of Floyd County v. Mass. Bonding & Ins. Co., 175 Ga. 584, 597, 165 S. E. 828; Century Indemnity Co. v. Fidelity & Deposit Co., 175 Ga. 834, 166 S. E. 235. The act of 1917 (Acts of 1917, pp. 199,

200) is entitled: "An Act to authorize the treasurers of the counties of this State to deposit county funds in any bank or banking institution which has been designated by law as a depository for State funds, and for other purposes." The first section broadly enacts the authority in those very words. The second section is: "Any depository of the State funds so selected by the county treasurer to be a depository of the county funds shall, in addition to the bond given to the State as security for the money of the State deposited in said bank, give to the county treasurer a bond in an amount sufficient to protect him from any loss, which bond shall be payable to him, and shall be conditioned to fully account to him for all county moneys that may be deposited by him as such treasurer under the terms of this Act." The third section provides that the treasurer may contract for interest on the deposit, which is to belong to the county. The Legislature has full power to direct how the county money shall be handled. The permission to contract for interest shows that the deposit here authorized is to be a loan and not a special deposit, and the fact that the interest is to go to the county shows that the treasurer acts for the county and not for his own benefit. We think the sound construction of the second section is not that the treasurer makes the deposit at his own risk and takes a bond for his personal benefit, but that he acts throughout for the county and in his official capacity, and that the bond is to be payable to him as treasurer and is to prevent loss to the treasury. The real doubt is whether unless the bond is given the authority to make and receive the deposit exists. On the one hand, it may seem unreasonable to enable the treasurer by the deposit to relieve his bond on the bank's sole credit; but on the other hand, the Legislature may have considered that the credit of a bank which has been selected as a state depository, coupled with its duty to give bond at any time, is equal to the credit of the treasurer's bond. By the recent Act of 1933, §§ 6 and 7 (Acts of 1933, pp. 83, 84), a county treasurer is now required to deposit the county money in bank and to have it give bond to secure the deposit; and if deposited officially or if the bank knows it to be a public deposit his bond is thereby relieved. Neither the act of 1917 nor that of 1933 declares that the bond shall be given before the deposit is received, as does the statute touching state depositories. Civ. Code, § 1252. The deposit is broadly and unconditionally authorized in the first section of the act of 1917, and its title declares the grant of

this authority to be the main purpose of the act. The second section does not purport to condition the right to receive the deposit, but fixes a duty on the depository which has undertaken so to act to give a bond to the treasurer sufficient to protect him officially from any loss. The treasurer might very wisely withhold deposits until the bond is given, and he may be under duty to see that it is given, but if a deposit is made in a state depository under authority of the first section before a bond is given, since the act does not in terms forbid it, we cannot deny that the intended relation of debtor and creditor arises. The bank thereupon becomes debtor to the county and acquires title to the funds deposited. Money of the United States was traced and a lien was fixed on a bank's assets because the bank was not an authorized depository in Allen v. United States (C. C. A.) 285 F. 678; but this was because 18 USCA § 182 makes it a crime for a banker not an authorized depository to knowingly receive public money of the United States from an officer. The like decision in San Diego County v. California National Bank (C. C.) 52 F. 59, was based on the law of that state which made the deposit illegal. So, also, in Merchants' National Bank v. School District (C. C. A.) 94 F. 705, and Board of Commissioners v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100. In American Surety Co. v. Jackson (C. C. A.) 24 F.(2d) 768; United States National Bank v. City of Centralia (C. C. A.) 240 F. 93; and Leach, Superintendent, v. Farmers' Savings Bank, 204 Iowa, 1083, 216 N. W. 748, 65 A. L. R. 679, the statutes authorizing deposit expressly required that bond be taken before any deposit is made, as does the Georgia state depository statute. Civ. Code § 1252.

■ Though the point has not been argued, the bill before us fails, as pointed out by a ground of the motion to dismiss, to show that any of the assets taken over by the receiver are the proceeds of these county deposits. It would not suffice to establish that the bank wrongfully got money of the county and mixed it with its own, but it must also appear that until the receiver got the assets the fund into which it went has never been reduced below the sum claimed, or if deposited in another bank was not lost by offset. This is not alleged. To succeed against the receiver in such a tracing it must appear not only that the bank wrongfully got the money, but that the receiver also got it or something representing it.

Judgment affirmed.