23215. ALLEN *et al.* *v.* HENDERSON, administrator, *et al.*

DECIDED NOVEMBER 27, 1933. REHEARING DENIED DECEMBER 18, 1933.

*Davis & Friedin, Watts Powell,* for plaintiffs in error.
*Martin, Martin & Snow,* contra.

GUERRY, J. (After stating the foregoing facts.) ■ In ground 1 of the demurrer it is contended that the contract between the

plaintiff and the defendants is a contract of guaranty, and that no demand for the money is alleged against the principal, and no excuse is given why such demand was not made, and therefore no suit can be maintained against the guarantors. Assuming, for the purpose of this ground, without deciding, that the contract here sued on is one of guaranty, we do not think there is any merit in this contention. It is true that in a contract of guaranty the obligation of the guarantor is secondary to that of the principal, and a demand must be made on the principal, but it is also true that a petition which alleges that a bank has been taken over by the superintendent of banks as an insolvent bank sufficiently shows that the bank has defaulted and that a demand would be futile. The purpose of the rule that a demand be made on the principal is to show his failure, refusal, or inability to comply with his undertaking. It is not merely a technical requirement. We do not think it can be seriously urged that a suit can not be maintained against the guarantors of an insolvent bank because of the failure to do a futile thing. The law does not require the doing of an unnecessary thing. It can neither take from nor add to the life of the action. Our position here is supported in 7 C. J. 663, where it is said: "Ordinarily a formal demand for repayment is a condition precedent to the maintenance of an action against a bank for a deposit; but this rule does not extend to cases where the bank has disclaimed liability, or where the demand would manifestly be futile, as in a case where the bank has suspended payment." We rule, therefore, that the trial judge did not err in overruling this ground of the demurrer.

■ In ground 2 of the demurrer it is contended that the plaintiff, as tax-collector, was without authority to make a lawful deposit, and that he therefore could not enter into a valid contract with the defendants guarantying such a deposit, as such a contract would be contrary to public policy. If the deposit made by the tax-collector in this case was unlawful, the defendant's contention as to the invalidity of a contract in contemplation of such unlawful act would weigh heavily with us. We are, however, unable to conclude that this act was unlawful, although the act itself is not expressly authorized by any statute. Counsel for plaintiff in error, in his brief, insists that there is no law authorizing a deposit in a bank by a tax-collector except to the limited extent and in the

limited manner defined in section 1215 of the Civil Code (1910). However, due to the statement in the bill of exceptions that it was agreed between counsel that Dooly county did not have a population of 30,000 at the time of the contract or·when the bank failed, a different law applies. That law is to be found in the act of 1925 (Ga. L. 1925, p. 80), which reads as follows: "Whenever the tax-collector, in any such county having a population of less than thirty thousand, collects State taxes to the amount of five thousand dollars, he shall at once pay the same over to the treasurer as now required by law; and shall also pay over all the taxes he may have collected during any two weeks, on every other Saturday, whether the same amounts to five thousand dollars or not; so that no tax-collector in said counties shall have to keep any money of the State in his hands for a longer period than two weeks." Also "Said tax-collectors, county tax commissioners, sheriffs, and constables shall each pay over, from time to time, the county taxes to the proper officers, as now required by law, so soon as there is collected five thousand dollars, and if he fail to collect said sum during any two weeks, he shall then pay over on Saturday all he has collected during the prior two weeks, together with a list of the taxpayers, and the amounts paid by them, during said period." It is evident from this amendment that the legislature contemplated, and even made it so, that tax-collectors in counties of this population should at some time, viz. two weeks, or until $5000 due the State and county was collected, have on hand moneys belonging to the State and county, but not legally due.

The plaintiff in error asserts that he must deposit this money in a State depository, and a deposit of it anywhere else would be illegal and void. We can not agree with able counsel as to the purpose of State depositories. State depositories were created for the purpose and as a means whereby the tax-collectors could remit money due the State, that is, as a method of payment of money to the State, but to be used only when the money is due. This construction is evident from the act creating such depositories, as it is provided that upon deposit of money by a tax-collector the bank shall give him a receipt, and that it shall be a good voucher; that a duplicate of the receipt shall be sent by the bank to the treasurer, who shall turn it over to the comptroller to be credited to the tax-collector's account. See sections 1249 to 1262 of the Civil Code

(1910). But he is not *required* to use a State depository until two weeks after the money is collected, or until he has on hand $5000 due the State. To determine further whether the deposit made in this case by the tax-collector was unlawful, it is interesting and instructive to read what the Supreme Court said in the case of *Century Indemnity Co.* v. *Fidelity &c. Co.*, *175 Ga.* 834 (166 S. E. 235), in a contest between two surety companies as to who was liable on their bond for a default of the treasurer. "Did the deposit on time certificate with the bank constitute a default, or did the failure of the treasurer to pay over the amount of money which he was due to the county as treasurer, when called upon, constitute the default? It is insisted by the plaintiff that the time deposit *was unlawful* [italics ours], unauthorized, amounted to a conversion, and constituted a default on the part of the county treasurer. On that question a number of authorities from foreign jurisdictions are cited, as well as *Lamb* v. *Dart,* 108 *Ga.* 602 (34 S. E. 160), and Ga. Laws 1917, p. 199, Michie's Code, § 578(1). That act provides that county treasurers are 'authorized' to deposit, in any bank or banking institution which has been designated by law as a depository for the funds of the State, the county funds which may come into their hands as county treasurers. It also provides that any depository of the State funds so selected by the county treasurer to be depository of the county funds shall, in addition to the bond given to the State as security for the money of the State deposit in said bank, *give to the county treasurer a bond sufficient in amount to protect him from any loss, which bond shall be payable to him, and shall be conditioned to fully account to him for all county moneys deposited by him as such county treasurer.* (Italics ours.) The act of 1924 (Ga. Laws 1924, p. 86; Michie's Code, 467(3)) also provides that funds collected for the purpose of payment of principal and interest of bonded indebtedness under the constitution 'may' be invested in valid outstanding bonds, of such county or of some other county of the State, which have been duly validated, or valid outstanding bonds of the State of Georgia or of the United States, etc. It must be observed that neither of these provisions makes their requirements absolute. County treasurers may follow the provisions of either of these statutes, and thereby become absolutely safe from loss, as well as making safe the public funds with which they are in-

trusted. *However, so far as we are aware, he may keep the funds in his own possession so long as he is prepared to pay them out when lawfully authorized and required so to do.* [Italics ours.] In *Lamb* v. *Dart,* supra, where the deposit was on general account and not on time certificate, this court said: 'With the safe custody of the public money that went into his hands he, and he alone, was intrusted. There is no authority whatever for his making any other person or corporation the custodian of the fund. . . The bank was . . under no obligation to keep that fund separate and to itself as specific property belonging to the county, or to its treasurer. It could appropriate it to the payment of checks drawn upon the bank, and could otherwise use it in the course of its legitimate business. Such general deposits in bank really create the relation of debtor and creditor between the bank and the depositor. It therefore simply amounts to a loan to the bank. With the same reason might it be contended by a public official that he is relieved from liability for public funds in his hands because he loaned [them] to an individual in the utmost good faith, and with the honest belief that the borrower was perfectly solvent. Public policy will not tolerate such a defense by a public official. It is true the rule of law which is announced in this case may in some instances operate harshly, but a county treasurer when he accepts his office takes it with all of its responsibilities and its perils. Among these responsibilities is the safe keeping and the proper disposition of the county funds that go into his hands; and among the perils he assumes is the liability of its loss, whether he keeps it himself or deposits it in bank; and when it is lost, especially when the loss results from the failure of another with whom he has deposited the fund without authority of law, there has been a breach of his bond, and he is liable to the county for the loss.' The question in that case was whether a county treasurer was liable for defalcation because of the failure to account for county funds which had been deposited in good faith in a bank believed to be and generally understood to be solvent. The question whether the deposit itself was a conversion was not involved. *It does not necessarily follow that the county treasurer was guilty of a defalcation because he made a contract that was not expressly authorized by statute. We do not consider the language in Lamb v. Dart, where a deposit was referred to as*

*'without authority of law,' to mean that it was criminal, or a conversion amounting to a defalcation. We think the proper construction is that it merely meant that there was no statute in terms authorizing it, rather than being against the law in the sense of being a breach of duty or an official default. So far as we are aware, county treasurers in Georgia very generally deposit their funds in a bank as a convenient and safe method of handling. Such deposits have never been considered as amounting to a default."* [Italics ours.]

We think this language fully answers the contention of the plaintiff in error that the deposit by the tax-collector in this case was unlawful. Although that case concerned the duty of a treasurer and not a tax-collector, yet in handling public money their situation is analogous, in that there is no statute *requiring* them to deposit their funds in a particular place. It must be conceded by all that at some time a tax-collector will have on hand tax money that is neither due to the State nor to the county, and that as an insurer of public money he must take some precautions to protect it. We can not help but be driven to the conclusion that the transaction would be necessarily tainted with illegality if no bond had been exacted from the bank, or its directors, and no protection whatever afforded the safety of the public funds.

Ground 3 of the demurrer complains that the contract sued upon is void and unenforceable for the further reason that it is against public policy in that it would and did have the effect to create a preference in the event of contemplated suspension or insolvency of the bank, which is violative of the banking act of 1919 (Ga. L. 1919, p. 135; Michie's Code, § 2366(192)). This is a suit against the directors of the bank and not against the bank. We can not see that the bank has pledged any of its assets by the contract here made, nor are we able to agree with counsel in his contention. The contract here made is an effort on the part of the directors of the bank to individually guarantee this deposit. We can see no wrong in the contract made, but, granting for the sake of the argument that the agreement entered into by the directors is illegal for the reason here alleged, can the directors who were parties to the contract say, when they are sued for its performance, "the contract is unenforceable as it was wrong for us to make it," and thereby deny liability thereunder. It would be false logic to

hold that the directors could avoid liability under the contract for the reason that the making of it made it a great temptation for them to commit an illegal act to the detriment of third persons. If there is a wrong, or if any harm has been committed, let those that have been injured complain, and not those who have made the wrong a possibility. No error was committed by the trial court in overruling this ground of the demurrer.

■ Headnote 3 needs no discussion.

■ The second and third headnotes fully answer the last three grounds of the demurrer. The case of *Town of Douglasville* v. *Mobley,* 169 *Ga.* 53 (149 S. E. 575), is in no way applicable to this case. The trial judge did not err in overruling the general demurrer.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*