Jeff WENTWORTH, Relator,

v.

Fred MEYER, Chairman, State Republican Executive Committee, Respondent.

No. D–2662.

Supreme Court of Texas.

Sept. 16, 1992.

Robert J. Meyers, San Antonio, Randall Buck Wood, Austin, John E. Clark, San Antonio, for relator.

Harold D. Hammett, Fort Worth, Robert D. Daniel, Houston, Kenneth W. Anderson, Jr., Dallas, Javier P. Guajardo, Austin, Michael E. Grimes, Round Rock, J. Patrick Wiseman, Austin, for respondent.

OPINION

COOK, Justice.

In this original proceeding, we must determine whether the Texas Constitution prevents Relator Jeff Wentworth from serving as a state senator in the Texas legislature. The legislative term would overlap, by twenty-one days, Wentworth's previous term of appointment to the Board of Regents of the Texas State University System. The question is whether article III, section 19 of the Texas Constitution renders Wentworth ineligible because of this overlap. Wentworth denies his candidacy violates the constitution because he resigned his position on the Board long ago, and seeks mandamus relief to ensure his place on the ballot as the Republican nominee. Because we determine that Wentworth's resignation prior to running for office places him outside the prohibi-

tions of the constitution, we conditionally grant the writ.[1]

## I.

On March 24, 1987, the Governor appointed Wentworth to the Board of Regents for a six year term that would expire on February 1, 1993. On May 10, 1988, Wentworth resigned as regent, before assuming office as a state representative on May 11, 1988, after a special election. Wentworth was re-elected to the House of Representatives in November 1988 and November 1990, and his current term as a representative would not expire until the legislature convenes on January 12, 1993, when his prospective term as state senator, should he prevail, would begin.

Wentworth won the Republican nomination for State Senator from District 26 in a runoff election on April 14, 1992. On April 24, Fred Meyer, State Chairman of the Republican Party of Texas, certified to the Secretary of State that Wentworth was the Republican Party's nominee for the office. Three weeks later, Meyer notified the Secretary of State by letter that he had determined and declared Wentworth ineligible as the Republican nominee. Meyer further informed the Secretary that the district executive committee, or the State Republican Executive Committee, would be selecting a replacement nominee for the general election. Meyer based his decision on article III, section 19 of the constitution:

> No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the Legislature.

TEX. CONST. art. III, § 19.

## II.

■ We consider the question whether Wentworth's resignation from the Board, four years before his victory in the recent runoff election, saves his candidacy from the prohibition of section 19. Resolution of

the issue requires interpretation of the words "during the term for which he is elected or appointed." The words support two interpretations. If the "term" which cannot overlap is the entire six-year Board term, then Wentworth cannot become a state senator. If Wentworth's "term" ended when he resigned, then he is free to run for legislative office.

■ In interpreting any constitutional provision, we begin with the text of the constitution. When there is doubt as to the meaning of the literal text, we must then consider the intent of the people who adopted the constitution, although the history of that intent is often difficult to discern. *See Edgewood v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989) (citation omitted). We remain aware that the constitution was ratified to function as an organic document to govern society and institutions as they evolve through time. *Id.* These general principles are buttressed by another, more specific, rule of interpretation in disputes involving elections: Any constitutional or statutory provision which restricts the right to hold office must be strictly construed against ineligibility. *Brown v. Meyer,* 787 S.W.2d 42 (Tex.1990). This rule is particularly important where, as here, the language is susceptible of varied interpretations.

In *Dawkins v. Meyer,* 825 S.W.2d 444 (1992), we discussed the purpose of section 19. The provision bolsters the separation of powers within our state government. Specifically, the section protects the legislature from undue influence by certain officeholders. *Id.* at 448; *see also* TEX. CONST. art. III, § 8, interp. commentary (Vernon 1955) (commentary authored by A.J. Thomas, Jr. and Ann Van Wymen Thomas).

It is consistent with this purpose to interpret section 19 as prohibiting those officeholders from sitting in the legislature during the time they hold their offices. On the other hand, the purpose of section 19 is not advanced by denying legislative office to someone who abandons his office four

---

1. We reserve the issue when an officeholder must resign to avoid article III, section 19.

years before seeking a legislative seat. That this is so is illustrated by the case before us today. Wentworth can exert no influence over the legislature by virtue of his former position as a regent, for he resigned that position four years ago. It was filled and is now occupied by someone else. Moreover, Wentworth has already served two terms in the legislature as a member of the House of Representatives. The purpose of section 19 cannot be fostered by an interpretation that denies this former regent the opportunity to run for the state senate.

### III.

We are aware that the views we express today conflict with previous opinions of this court. In *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), a case remarkably like the one we consider today, we construed section 19 in favor of ineligibility. In *Lee*, a county commissioner resigned office to run for the house of representatives. His term as commissioner overlapped the house term by nearly two months. A petition for writ of mandamus was filed to remove his name from the ballot. We conditionally granted the writ. *Id.* at 620. It made no difference that the office seeker in *Lee* resigned prior to seeking office. We stated that it is the term which controls, and it makes no difference when the office-holder resigns, even if he resigns only a day after he begins holding office. *Id.* at 619; *see also Kirk v. Gordon*, 376 S.W.2d 560 (Tex.1964) (district attorney who proffered letter of resignation could not run for state representative).

This interpretation of section 19 is at odds with the rule that requires us to strictly construe election law restrictions against ineligibility. The interpretation narrows, rather than expands, the potential for eligibility. Because we are bound to decide in favor of eligibility whenever possible, we must reevaluate our opinion in *Lee*.

We initially review our contention that, by adopting the disputed language of section 19, the framers intended to insure that "term of office" meant an entire term, not just the officeholder's tenure in the term. Without this meaning, we said, the language is mere surplusage. *Lee*, 618 S.W.2d at 620. The interpretation is plausible, but it is only one possible suggestion for adoption of the phrase. Addition of the critical language could carry other meanings. The phrase could mean that officeholders are disqualified only during their tenure in office, and not perpetually. Given the two interpretations, and absent an adequate history of the constitutional convention to guide us, we must advance the purpose of section 19 and adhere to the rule requiring us to decide in favor of eligibility. We can no longer view the language at issue as preventing eligibility where an officeholder has resigned before running for the legislature.

We also review the authority cited in *Lee*. We relied upon the constitutions of other states and three out-of-state cases to support our holding. Our current research, however, reveals no out-of-state constitutional provisions which prevent a officeholder from running for the legislature once resigning office. As for the three cited cases, none involve either provisions or situations which mirror those we consider today. *See generally Rowe v. Tuck*, 149 Ga. 88, 99 S.E. 303 (1919) (statute prohibiting simultaneous service in municipal offices); *State ex rel. Childs v. Sutton*, 63 Minn. 147, 65 N.W. 262 (1895) (constitutional provision prohibiting legislators from holding other offices); *Baskin v. State of Oklahoma*, 107 Okla. 272, 232 P. 388 (1925) (constitutional prohibition against legislators receiving gubernatorial appointments).

■ *Lee v. Daniels* and *Kirk v. Gordon* adopt an interpretation of section 19 which restricts eligibility without adequate support in the language of the section or its purpose. For this reason, and to the extent they conflict with our decision today, these cases are overruled.

We do not, however, overrule or disturb in any way our holding and opinion in *Dawkins v. Meyer*, 825 S.W.2d at 448. The facts and issue in that case were entirely different than those presented here. *Daw-*

*kins* was argued and decided on the issue whether the office which prevented Dawkins' candidacy was lucrative within the meaning of section 19. Unlike Wentworth, when Dawkins moved for leave to file the petition for writ of mandamus, she had not resigned the office and had expressed no intent to resign.

## IV.

Wentworth resigned his position as a member of the Board of Regents of the Texas State University System years before he ran for the Senate. During part of the intervening years, he served as a state representative. His position as regent was filled by someone else. To allow Wentworth to take his seat as a senator does not violate either the express language or the purpose of article III, section 19 of the Texas Constitution. The language does not prevent those who have resigned from their offices from running for the legislature. The purpose of the provision, that is, to maintain separation of the powers of our government, is not served by excluding from the legislature those who hold none of the offices enumerated in section 19.

We conclude that Wentworth is not ineligible to hold office in the Legislature under article III, section 19, that Meyer was in error in deciding and notifying the Secretary of State otherwise, and that Meyer should withdraw that declaration of ineligibility. We assume that Meyer, as the State Chairman of the Republican Party, and John Hannah, as the Secretary of State, will act in accord with this opinion. The writ will issue against Meyer only if he fails to act in accordance with this opinion.

Concurring Opinions by GONZALEZ, MAUZY, HECHT and GAMMAGE, JJ.

Concurring Opinion by CORNYN, J., joined by HECHT, J.

Dissenting Opinions by PHILLIPS, C.J., and DOGGETT, J.

**1.** I lament that this change of interpretation comes too late for Ms. Dawkins. At the oral argument of her case, counsel for Ms. Dawkins informed the court that she would have re-

GONZALEZ, Justice, concurring.

For the reasons stated in my dissenting opinion in *Dawkins v. Meyer*, 825 S.W.2d 444, 451 (Tex.1992) (Gonzalez, J., dissenting), I concur in the judgment of the Court and in the decision to overrule *Kirk v. Gordon*, 376 S.W.2d 560 (Tex.1964) and *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964).[1] As a matter of constitutional construction, equal protection and First Amendment rights, a person who resigned an appointed office over five years ago should be permitted to run for the legislature.

A restriction on the possible field of candidates infringes not only on the rights of the person seeking office, but also on the right of the people to select the candidate of their choice. For this reason the analysis must begin with the presumption "that constitutional provisions which restrict the right to hold public office should be strictly construed against ineligibility." *Brown v. Meyer*, 787 S.W.2d 42, 45 (Tex.1990); *see also Sears v. Bayoud*, 786 S.W.2d 248, 251 (Tex.1990). Therefore, it follows that if a constitutional provision uncertain of meaning is susceptible of two reasonable interpretations, the least exclusionary must be utilized.

Article III, section 19 of the Texas Constitution provides that:

No judge of any court, Secretary of State, Attorney General, clerk of any court of record, **or any person holding a lucrative office** under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the **Legislature.**

Tex. Const. Art. III, § 16 (emphasis added). The Court ignored the presumption of eligibility in *Lee*, instead, holding that a resignation did not affect eligibility if there was any overlap between the term of the previous office and the seat in the legislature sought by the officeholder. Justice Steakley, joined by Justice Culver, disagreed:

signed her office on the board of MHMR before running for the legislature except for the precedent of *Lee*.

It is my view that Section 19 merely carries the presupposition that a person will assume and occupy an office for the term to which he has been elected or appointed, and the phrase "during the term for which he is elected or appoint-ed" negates any basis for the contention that a person once a judge, or a Secretary of State, or an Attorney General, or a clerk of any court of record, or the holder of a lucrative office under the United States, or this State, or any foreign government, remains ineligible to the Legislature after the completion of the term for which he is elected or appointed.

Moreover, I am unable to see how ineligibility pertaining to office in the general class to which Section 19 applies, i.e., holders of lucrative offices, can exist in the absence of an actual holding of the office. The *sine qua non* of ineligibility pertaining to this class is the holding of office. If a person is not holding a lucrative office at the time in question, how can Section 19 apply?

377 S.W.2d at 621. How indeed can section 19 apply to one who not only has not held that office for four years, but has served in the legislature during the interim?

The constitutional history cited by Chief Justice Phillips in his dissent does little to illuminate original intent. The fact that the phrase "during the term for which he is elected or appointed" was not always there, but was added at some point, does not make ineligibility a more probable interpretation than the eligibility interpretation of Justice Steakley.[2]

As I expressed in *Dawkins,* I have concerns that the restriction on running for office represented by *Lee* is fraught with constitutional problems. 825 S.W.2d at 452. The United States Supreme Court analyzed article III, section 19 in *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). In *Clements,* several justices of the peace who wished to run for the legislature challenged article III, sec-

tion 19 on First Amendment and equal protection grounds. A plurality of the court held that section 19 survived the minimal scrutiny of the "rational relationship" test, and therefore did not violate the United States Constitution. 457 U.S. at 971, 102 S.Ct. at 2848. The Court carefully limited its opinion to the facts before it, to judges holding office while seeking a seat in the legislature, and expressly stated that its analysis would not necessarily vindicate article III, section 19 as applied to other offices. The Court concluded that a provision which precludes a judge from holding office and deciding cases while at the same time seeking votes for the legislature was rationally related to the legitimate state interest in the integrity of the judiciary.

The Court identified the following as possible purposes of article III, section 19: 1) Texas' interest in maintaining the integrity of the judiciary; 2) the likelihood that the demands of a political campaign would tempt a judge to devote less than was required by his or her current office; and 3) the need to discourage a judge from leaving office before the end of the term. 457 U.S. at 968, 102 S.Ct. at 2846. As applied to a member of a board of regents, I do not believe that section 19 bears a rational relationship to these purposes. The prohibition only applies to those running for the legislature. A current officeholder is free to resign and run for any other office in the state. Only an officeholder whose term happens to overlap with that of the legislature is prohibited from running. An officeholder whose term expires even one day before the legislature's term begins may hold and exercise office while campaigning. *See Chapa v. Whittle,* 536 S.W.2d 681 (Tex.Civ.App.—Corpus Christi 1976, no writ).

Wentworth is a case in point. It is not his current position that would, under the dissent's view, disqualify him, but the office he held prior to that. None of the legitimate state interests found by the United States Supreme Court are advanced one whit by disqualifying Wentworth.

---

**2.** Justice Steakley distinguished the case of *Kirk v. Gordon,* 376 S.W.2d 560 (Tex.1964), on the grounds that he did not believe a prospective

resignation was sufficient to avoid the prohibition of article III, section 19. *Lee,* 377 S.W.2d at 622 (Steakley, J., dissenting).

I agree with Justice Brennan, as he stated in his dissent in *Clements*, that article III, section 19, as interpreted in *Lee*, advances only the interests of incumbent legislators, not any legitimate state interest. "The only conceivable state interest in barring these candidacies would be the purely impermissible one of protecting Texas legislative seats against outside competition." *Clements*, 457 U.S. at 979, 102 S.Ct. at 2852. (Brennan, J., dissenting).

This constitutional analysis of the possible purposes of article III, section 19 brings us back to the original intent of the delegates to the convention for the Texas Constitution of 1876. We cannot ascribe to them such an impermissible intent. Moreover, in light of the populist mood of the convention, it is highly unlikely the delegates intended to make incumbent protection a constitutional guarantee. *See* Watts & Rockwell, *The Original Intent of the Education Article of the Texas Constitution*, 21 ST. MARY'S L.J. 771, 785–91 (1990) (discussing the role the Grange movement played in the convention, and its distrust of the governmental establishment, in particular, the legislature).

Today's opinion should not, however, be viewed as license to hang onto one office while prospecting for another. A chairman may not certify an ineligible candidate for the primary ballot. Tex.Elec.Code §§ 172.-029, 172.057. A chairman may refuse to receive and reject the application to be placed on the primary ballot of one who is ineligible. *See Hall v. Baum*, 452 S.W.2d 699 (Tex.1970). One who has filed for an office without resigning a current office with an overlapping term risks disqualification which later resignation after the filing deadline would not cure.

Finally, I take issue with the majority on one facet of its opinion. It states that the Court "assume[s] ... John Hannah, as the Secretary of State, will act in accord with this opinion." 839 S.W.2d at 769. Although not a party, Secretary Hannah has filed a response indicating that he has no interest in the merits of this dispute and that he is ready to cooperate with the Court in the performance of his duties.

The Court's statement is unnecessary and can be viewed by some as a criticism of Mr. Hannah's performance of his duties. I would delete this statement from the opinion.

MAUZY, Justice, concurring.

Six months ago, a majority of this court broadly construed article III, section 19 of the Texas Constitution to prevent Pattilou Dawkins from running for state representative. *Dawkins v. Meyer*, 825 S.W.2d 444 (Tex.1992). While acknowledging the harshness of that result, the court solemnly declared that "the power to change such a result lies not in our hands, but in the hands of the sovereign people of the State of Texas." *Id.* at 450. Today, though, the court has no such compunctions about changing the law. To reach the result it desires today, the majority belatedly overturns the decisions relied upon in *Dawkins*, and gives to Jeff Wentworth the relief it denied to Pattilou Dawkins.

I dissented from the majority's decision in *Dawkins*, and adhere to my view that article III, section 19 should not be lightly applied to prevent voters from electing the candidate of their choice. For that reason, and for additional reasons specific to this case, I join the majority's decision to grant the writ of mandamus.

This is not the first time since Wentworth's appointment to the Board of Regents that the Chairman of the Republican Party has been asked to certify him as eligible for the legislature. Nor is it the second, third, fourth, fifth, or even the sixth. After a special election in 1988, Wentworth was reelected to the legislature in both 1988 and 1990. In each of those years, the Chairman of the Republican Party bore the responsibility of certifying Wentworth as eligible in both the primary and the general elections. *See* Tex.Elec. Code §§ 172.028 (primary), 172.122 (general); *see also* § 141.032 (requiring party chairman to review candidate's application to determine whether all requirements are met). On each of those occasions—and again in the 1992 Senate primary and run-

off [1]—the Chairman of the Republican Party certified that Wentworth was eligible for the office he sought.

This time, though, the Chairman of the Republican Party has changed his mind. After certifying Wentworth as eligible for the Texas Legislature half a dozen times, the Chairman now argues that Wentworth has been ineligible ever since his 1987 appointment to the Board of Regents. This change apparently arises from nothing more than mere whim: the main cases on which the Chairman relies are almost thirty years old, and there has been no change in Wentworth's status to make him any less eligible now than he was in 1988.

I would hold that, under these circumstances, Respondent Chairman Meyer is estopped from declaring Wentworth ineligible. When a candidate has been certified as eligible on six prior occasions, and there has been no subsequent change affecting his eligibility, a sudden decertification by the party's chairman is both arbitrary and unfair. This sort of game-playing by party officials harkens a return to the days of political bosses and smoke-filled rooms, when the ordinary voter was effectively shut out of the decision-making process.

I welcome the court's new approach to article III, section 19. I regret, however, that this change comes too late to restore the candidacy of Pattilou Dawkins. Given the short time between the two decisions, the court's change of attitude seems as abrupt and arbitrary as Meyer's decision to remove Wentworth from the ballot.

HECHT, Justice, concurring.

I join in JUSTICE COOK's opinion for the Court and in JUSTICE CORNYN's concurring opinion. To summarize the Court's decision, five Members of the Court—JUSTICE COOK, JUSTICE GONZALEZ, JUSTICE HIGHTOWER, JUSTICE CORNYN and myself—hold that article III, section 19 of the Texas Constitution [1] does not prohibit an officeholder who

resigns his position from serving in the Legislature during a time when he would otherwise have remained in his former office. These five Justices also hold that *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), and *Kirk v. Gordon*, 376 S.W.2d 560 (Tex.1964), are overruled to the extent that they conflict with today's decision. No one who joined in the Court's opinion in *Dawkins v. Meyer*, 825 S.W.2d 444 (Tex.1992), has expressed disagreement with that decision today. I write separately only to respond to the dissenting opinions of CHIEF JUSTICE PHILLIPS and JUSTICE DOGGETT.

JUSTICE DOGGETT is adamant that there is but one reasonable construction of article III, section 19, and it is that anyone who resigns a lucrative office in this state, the federal government, or any foreign country, is ineligible to serve in the Legislature during the time that he would have held his former office had he not resigned. So plain is the language of section 19 in his view that the only explanation for the Court's failure to reach the same conclusion is that the Court has substituted its own views of what the provision *should* say for what it *does* say. JUSTICE DOGGETT goes even further, of course, assailing not only the Court's construction of section 19 but the Court itself for ignoring the language and history of the constitution altogether and abandoning our *Dawkins* decision earlier this year.

It is not clear to me which view of article III, section 19, the Court's or the dissenters', is better *policy*. In any event, this is certainly not the issue we are to decide, and the Court does not decide it. We are obliged to construe the text as written and to effectuate the intention of the framers in adopting it, whether we agree with the policy it embodies or not, and that is what the Court does. One may certainly disagree with the result the Court reaches; there are easily two views of the provision,

---

1. *See* Tex.Elec.Code § 172.121 (requiring state chairman to certify candidates for placement on runoff ballot).

1. "No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the Legislature."

and neither is free of difficulty. But JUS-TICE DOGGETT is absolutely wrong to suggest that the Court has violated its obligation of fidelity to the constitutional text.

Article III, section 19 makes certain specific officials—judges, the Secretary of State, the Attorney General, and court clerks—and any other person "holding" lucrative office in any government (except one of our sister states) ineligible to serve in the Legislature. If this were all section 19 said, its construction would be a simple matter. A person who resigns his office is no longer "holding" office and therefore is not made ineligible by this provision. However, section 19 adds that a person's ineligibility lasts "during the term for which he is elected or appointed". This additional phrase creates an ambiguity in the text. On the one hand, section 19 applies only to persons "holding" office, not persons who have ever held office. On the other hand, if section 19 does not apply to persons who have resigned office, it is not clear what the additional phrase adds to the meaning of the provision.

One court has held that this same "during the term" phrase in a statute virtually identical to section 19 does not extend the period of ineligibility beyond the point of resignation. *Rugg v. Town Clerk of Arlington*, 364 Mass. 264, 303 N.E.2d 723 (1973). The court in *Rugg* acknowledged that it had reached the opposite conclusion in 1929, but observed that its prior decision had not attempted to suggest a rationale for its construction, and in fact, none could be shown. To adopt a construction which had no discernible rationale, the court recognized, raised serious constitutional questions. The court also reasoned that reading the provision as inapplicable to officers who have resigned does not make the "during the term" language surplusage. The court noted that an officer may be required to hold over after his terms has expired awaiting the qualification of his successor, and that the "during the term" phrase would prevent him from being declared ineligible to hold other office during any holdover period of a prior office. In other words, the court read the "during the term" language as limiting the period of ineligibility rather than expanding it.

We, too, have previously construed the "during the term" phrase to mean that a person who has held office and resigned remains ineligible throughout the period he would have served had he not resigned. *Lee; Kirk.* Those cases did not offer a rationale for their construction of article III, section 19, or attempt to justify its consequences. They did not consider the arguments adopted by the court in *Rugg.* They focused entirely on the word "term". I agree that a "term" of office usually means that fixed period of time after which an officeholder *cannot* continue to hold the office without being reappointed or reelected, or without holding over for a successor. Ordinarily, we do not consider that a term of office ends when the holder leaves. The dissenters cite many examples of this meaning of "term", as well as the decisions of other state supreme courts in applying similar constitutional and statutory provisions in the same context. *In re Advisory Opinion to the Governor*, 94 Fla. 620, 113 So. 913 (1927); *Rowe v. Tuck*, 149 Ga. 88, 99 S.E. 303 (1919); *In re Opinions of the Justices*, 95 Me. 564, 51 A. 224 (1901) (not the opinion of a majority of the court); *Wachter v. McEvoy*, 125 Md. 399, 93 A. 987 (1915); *Richardson v. Hare*, 381 Mich. 304, 160 N.W.2d 883 (1968); *State ex rel. Childs v. Sutton*, 63 Minn. 147, 65 N.W. 262 (1895). Each of these cases holds that term of office is distinct from an officeholder's tenure, and that a term does not end when an officeholder leaves.

The trouble is, if the word "term" in article III, section 19 is given what I concede is its more common meaning, the provision has no sound rationale. A person who served the first day of a full term of office and then resigned would be ineligible for the Legislature for varying periods of time, depending on the office held: two years for most city council members, four years for district judges, six years for most university regents, eight years for a federal magistrate, fourteen years for a bankruptcy judge, and life for a federal district or appellate judge. It is not at all clear why the period that an officeholder is ineli-

gible to the Legislature should depend upon the fixed term of the office held, nor why, to take the extreme case, a federal district judge who retires from office should be ineligible to serve in the Texas Legislature for the remainder of his or her life (even if the judge did not regard the disability as too serious). The reason CHIEF JUSTICE PHILLIPS and JUSTICE DOGGETT offer—and the *only* reason that appears ever to have been put forward for this application of article III, section 19—is that the purpose of the constitutional provision is to discourage trafficking in offices and the neglect of those offices occasioned by campaigning for the Legislature. Now if the dissenters are right about this, the provision does little to further its purpose, for it does not disqualify all officeholders from all other offices for the duration of their "terms", but only certain officeholders from legislative office. It is an odd rule that allows a person who resigns from the Santa Fe city council and moves to El Paso to serve in the Texas Legislature before the fixed term of his council seat expired, but prohibits a member of the El Paso city council or a member of the government of Ciudad Juárez from doing the same thing. And it is an odd rule to prevent trafficking in offices and distracting campaigns that allows an officeholder to resign and run for any other office in Texas *except* the Legislature.

The dissenters attempt to show that the framers actually intended this construction of article III, section 19, odd consequences and all. Yet the historical evidence available to us indicates only that the provision did not contain the phrase, "during the term for which he is elected or appointed", prior to 1875, when it was added by amendment on the floor of the constitutional convention. Despite the absence of any record of debate concerning the purpose of the amendment, the dissenters conclude that it

must have been intended to operate as they now construe it. But this is not the only conclusion to be drawn from the evidence. Indeed, I doubt whether it occurred to the framers that article III, section 19 would operate to disqualify someone in relator's position from running for the Legislature. *See Rugg*, 303 N.E.2d at 725. If we were to resort to speculation—which is all we *could* do in the absence of any evidence of what the framers actually intended—we might as well suppose that the phrase was added to clarify that a person holding office was ineligible for the Legislature only so long as the "term" of office, and not thereafter. But we are not allowed to speculate, and the history of section 19 does not illumine the matter.

The dissenters point to the same phrase in the immediately preceding provision, article III, section 18, as evidence of the meaning to be given section 19. Section 18 declares legislators ineligible for other state office during the "term" for which they were elected if the appointment is made by the Legislature, or if the office was created or its emoluments increased during "such term".[2] JUSTICE DOGGETT observes that if the Court's construction of "term" were applied to this provision, it would not prohibit a legislator from appointment to any of the offices described as long as the legislator first resigned his seat. This difficulty with the Court's position cannot be denied. On the other hand, using the dissents' meaning of "term", a legislator who resigned midterm would be ineligible for appointment to an office if its emoluments were later increased, and perhaps even if they *could be* later increased. This situation has arisen several times in the federal government, requiring a construction of the essentially identical provision in article I, section 6, clause 2 of the United States Constitution.[3] In 1882, At-

---

**2.** "No Senator or Representative shall, during the term for which he was elected, be eligible to (1) any civil office of profit under this State which shall have been created, or the emoluments of which may have been increased, during such term, or (2) any office or place, the appointment to which may be made, in whole

or in part, by either branch of the Legislature...."

**3.** "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or

torney General Benjamin Harris Brewster advised President Arthur that former Senator Kirkwood was ineligible for appointment as tariff commissioner, a position that was created after he had served as a U.S. Senator, resigned, served as Secretary of the Interior, and resigned, but before the senatorial term which he would have served had he not resigned had expired. The Attorney General stated that he had found no state or federal case of assistance, and that he considered himself to be bound by what he regarded as the "precise and clear" language of the Constitution, irrespective of any policy it served. 17 Op.Att'y Gen. 365 (1882). Eighty-seven years later Attorney General Ramsey Clark reversed this position, advising Melvin R. Laird that he could commence his term as Congressman and still accept an appointment as Secretary of Defense, even if his salary as Secretary were increased by the Congress in which he would have served. 42 Op.Att'y Gen. 381 (1969).[4] The Attorney General has maintained this latter position, arguing in 1979 that Congressman Abner Mikva could be appointed U.S. Circuit Judge even though his pay would probably be increased by the same Congress. 3 Op.Off.Legal Counsel 286, 298 (1979). If the dissenters' reading of "term" were used in article III, section 18, a state senator who resigned midterm could not be appointed to any office before the full term for which he was elected expired, if the emoluments of the office could be increased in the next session of the Legislature at which, of course, he would not be present. In short, difficulties attend both the Court's and the dissenters' reading of "term" in article III, sections 18 and 19.

The dissenters' position boils down to this: we are bound to give "term" its ordinary meaning, whether section 19, thus construed, has any discernible rationale or not. I certainly agree that it is not our place to review the wisdom of the provision or to substitute our own views in its place.

We must construe the provision as written. But if there is more than one reasonable construction available, we should consider the effects of each construction in attempting to ascertain the framers' intent. They were entitled, of course, to write a provision with a doubtful purpose or no purpose at all, but we ought to presume that they did *not* do so. In deciding the proper construction of a constitutional provision, we must consider the effects of reasonable alternatives, not to find the one which we believe expresses the better policy, but to determine which construction, given its consequences, is most likely to have been the one the framers intended.

If "term" in article III, section 19 refers to an officeholder's time of service, the consequences of the provision are less troublesome. The period of disqualification no longer depends upon the fixed term of the office previously held, the disparities in treatment of officeholders in similar circumstances disappear, and legislative office is not singled out for special protection from among all offices which could be held. The effect of the provision is to prohibit a person from holding legislative office and any other lucrative office in this state, the federal government, or a foreign country at the same time. The obvious, and legitimate, purpose of the provision is to maintain the separation of powers in this State and to remove the Legislature from the influence of federal and foreign governments.

The consequences of the dissenters' position not only cast doubt upon the reasonableness of their construction; they also raise serious charges, which Wentworth argues in this case, that section 19 thus construed is in violation of constitutional guaranties of equal protection. The dissenters would hold, based upon *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), that the equal protec-

---

the Emoluments whereof shall have increased during such time...."

**4.** Attorney General Clark attempted to distinguish Attorney General Brewster's opinion as dealing with creation of an office rather than an

increase in its emoluments, "a crucial factual difference" in Clark's words. That distinction, however, does not appear to warrant a different construction of the constitutional provision. The Brewster opinion is simply rejected.

tion challenges to their reading of section 19 are without merit.[5] But *Clements* cannot be read so broadly. Only a plurality in *Clements* concluded that there is any rational purpose for the construction of section 19 that the dissenters' adopt in this case. CHIEF JUSTICE PHILLIPS argues that this does not "weaken the effect of *Clements*", *post*, at 783, suggesting that the *Clements* Court would have reached the same decision had they been confronted by Wentworth's arguments. Whether that assessment is accurate, the point remains that *if* section 19 as construed by the dissenters *should* have a rational purpose to it, one is hard pressed to conceive what it might be. Assuming, as CHIEF JUSTICE PHILLIPS asserts, that the State has "a legitimate interest in preventing abuse and neglect by all its officers" and in "encouraging officeholders to serve out their terms", *post*, at 783, section 19 does not fairly serve that interest. Officeholders are perfectly free to abuse and neglect their offices and leave them whenever they choose as long as they run for any other office in the state, from dog catcher to Governor, except the Legislature. The dissenters' reading of section 19 unavoidably treats candidates for the Legislature differently from candidates for any other office, and no justification for this discrimination has been suggested.

The Court correctly adopts a construction of article III, section 19 which avoids the serious equal protection challenges to the dissenters' position. Although this construction would almost certainly have affected the arguments made in *Dawkins* earlier this year, the relator in that case had not resigned at the time we heard and decided her petition for mandamus, and thus the meaning of the "during the term"

phrase was not in issue. Even on motion for rehearing, relator submitted only a resignation to be effective just before she would have assumed office as a legislator. It would have been improper for the Court to have anticipated and decided in *Dawkins* the issues we decide today. JUSTICE DOGGETT suggests that overruling *Lee* and *Kirk* destroys the foundation for *Dawkins*. *Dawkins* rests squarely upon *Willis v. Potts*, 377 S.W.2d 622 (Tex.1964). It cites *Lee* and *Kirk* only as cases involving examples of offices other than those mentioned specifically in article II, section 19, which have been held to be covered by that provision. Even the parties in this case have not argued that the decision we reach today would be inconsistent with *Dawkins*. The foundation of *Dawkins* remains intact.

CORNYN, Justice, concurring.

I agree that mandamus should issue in this case, but for reasons in addition to those expressed in the plurality's opinion. Accordingly, I write separately to state and explain those reasons. Further, I find it necessary to write to point out the erroneous factual assumptions[1] upon which the opinions of JUSTICES GONZALEZ, MAUZY, DOGGETT, and GAMMAGE rely. Those errors of historical fact lead them to the unjustifiable conclusion that today's ruling somehow conflicts with our recent decision in *Dawkins v. Meyer*, 825 S.W.2d 444 (Tex.1992).

I.

JUSTICES GONZALEZ, MAUZY, DOGGETT, and GAMMAGE[2] variously insist that the court's decision today conflicts with *Dawkins*, or alternatively, that we

---

**5.** JUSTICE DOGGETT notes that Wentworth did not raise an equal protection issue until after argument in the court of appeals. Of course, Wentworth was not required to do so, as this is an original proceeding.

**1.** Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence.
John Adams, *Argument in Defense of the British Soldiers in the Boston Massacre Trials* (Decem-

ber 1770) *reprinted in* THE TRIAL OF THE BRITISH SOLDIERS 101 (Mnemosyne 1969).

**2.** JUSTICE GAMMAGE claims that the plurality opinion "largely ignor[es]" *Dawkins*, and then proceeds to state that, in his opinion, Relator Wentworth's office as regent was not "lucrative." He does so despite the fact that the parties have not even disputed this issue, no doubt because this argument is foreclosed by our decision in *Dawkins*.

consciously avoided an opportunity to address the issues raised in this proceeding in that case. Neither contention is true. Not even Intervenor Carlos Higgins, Relator Wentworth's opponent for the state senate, urges us to overrule *Dawkins*.[3] That is for the simple reason that the issues of resignation and equal protection were not timely raised in *Dawkins*, but rather were first mentioned during the court's questions during oral arguments in that case, and then in JUSTICE GONZALEZ'S dissenting opinion on February 25, 1992.[4] The fact that Dawkins did not timely raise these issues is clear from the court's response to JUSTICE GONZALEZ'S opinion in which he urged that *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), and *Kirk v. Gordon*, 376 S.W.2d 560 (Tex.1964) be overruled. We (including JUSTICE DOGGETT) pointed out that Dawkins had neither resigned nor challenged article III, section 19 of the Texas Constitution on equal protection grounds:

> JUSTICE GONZALEZ'S dissent speculates how we might have answered contentions that Dawkins has not made arising under the United States Constitution; but these are only strawmen which *he* raises and then proceeds to knock down. Similarly, JUSTICE GONZALEZ'S arguments as to how we would have decided this case had Dawkins resigned her position on the MHMR board are only conjecture because that question is not before us.

*Dawkins*, 825 S.W.2d at 446 n. 3 (emphasis in original).

**3.** At the oral argument of this case, the following colloquy occurred:
The Court: Has anybody asked us to overrule *Dawkins v. Meyer?*
Mr. Wiseman (counsel for Mr. Higgins): It has not been asked in this case, your Honor.
The Court: Right.
Mr. Wiseman: And in fact, the Relator has specifically indicated in his brief that he does not ask for that.
The Court: And you're certainly not asking us to do that?
Mr. Wiseman: He's not asking for such a ruling.
The Court: And you're not asking us that?
Mr. Wiseman: No sir. I do not think that it would be appropriate.

The facts are these: On February 3, 1992, Dawkins filed a Petition for Writ of Mandamus in this court making no mention of resignation. Oral arguments were heard on February 11th, and the court's judgment and opinions were announced on February 25th. On February 27th, apparently in response to the suggestion in JUSTICE GONZALEZ'S dissenting opinion that *Lee* and *Kirk* should be overruled,[5] Dawkins resigned as a director of the Texas Department of Mental Health and Mental Retardation, effective December 31, 1992. The next day, February 28th, she filed both a Motion to Amend her Petition for Writ of Mandamus and a Motion for Rehearing, challenging for the first time the vitality of *Lee* and *Kirk*. Early voting was already underway, having begun on February 19th; in-person primary voting was conducted on March 10th. Ultimately, Dawkins, whose name had not been removed from the primary ballot, was defeated, mooting the resignation issue. The court formally acted on her Motion to Amend her Petition for Writ of Mandamus and a Motion for Rehearing, overruling both, on April 1st.

The facts thus show, contrary to the assertions of JUSTICES GONZALEZ, MAUZY, and DOGGETT that the effect of a resignation on an officeholder's eligibility to run for the legislature was neither timely raised, nor decided, in *Dawkins*. Dawkins did not tender her resignation until two days after we rendered our decision; she then asked us to reconsider her case based on changed circumstances. We eventually denied that Motion because it was rendered moot, but there are other

**4.** *Id.* 825 S.W.2d at 453 (Gonzalez, J., dissenting). During oral argument of *Dawkins*, on February 11, 1992, the court, on its own initiative, inquired whether Dawkins could remove the constitutional impediment to her candidacy by resigning, to which Dawkins' counsel replied:

Counsel: May it please the court. The case of *Lee v. Daniels* by this court, which we think was wrong, held that Ms. Dawkins cannot become eligible by resigning before the end of her term. Her term overlaps by 21 days, the term of the legislature. *She would be probably happy to do that, but that is not one of her alternatives.* (emphasis added).

**5.** 825 S.W.2d at 451 (Gonzalez, J., dissenting).

reasons why the issue of resignation cannot be considered timely when raised for the first time on motion for rehearing.

First, a motion for rehearing is routinely denied, or even expressly disallowed, in cases involving elections because we consider time to be of the essence. *See Terrazas v. Ramirez*, 829 S.W.2d 712 (Tex.1992); *Texas Democratic Executive Comm. v. Rains*, 756 S.W.2d 306 (Tex.1988); *Whitehead v. Julian*, 476 S.W.2d 844 (Tex.1972); *Spears v. Davis*, 398 S.W.2d 921 (Tex. 1966). Second, the sole purpose of a motion for rehearing is to provide the court an opportunity to correct any errors on issues already presented. *See Dewey v. American Nat'l Bank*, 382 S.W.2d 524 (Tex.Civ. App.—Amarillo, writ ref'd n.r.e. 1964), *cert. denied*, 382 U.S. 821, 86 S.Ct. 49, 15 L.Ed.2d 67 (1965). A motion for rehearing does not afford a litigant an opportunity to raise *new* issues, especially after the case has been briefed, argued, and decided on other grounds. *See Aviation Office of Am. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179 (Tex.1988); *E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363 (Tex.1987); *Morrison v. Chan*, 699 S.W.2d 205 (Tex.1985); *Austin Co. v. Vaughn Bldg. Corp.*, 643 S.W.2d 113 (1982). Therefore, as the preceding statement of facts and authorities demonstrate, we did not "reaffirm" *Lee* and *Kirk* in *Dawkins*. *See infra* at 786 (DOGGETT, J. dissenting); and, *Dawkins* does not control the issues raised here.

## II.

The historical antecedents to article III, section 19 date to an eighteenth century act of the British Parliament prohibiting royal appointees from serving in the House of Commons. *Dawkins*, 825 S.W.2d at 448.

The framers of the "antigovernment" constitution of 1876 likely shared Parliament's concern for concentration of governmental power, leading to, among other things, the adoption of article III, section 19. *See* T.R. FEHRENBACH, LONE STAR: A HISTORY OF TEXAS AND THE TEXANS 435 (Macmillan 1968). That provision was considered a means of mitigating undue influence by the executive upon the legislative branch. *Dawkins*, 825 S.W.2d at 448. Yet, when an officeholder resigns before seeking legislative office, it is difficult to discern a rational purpose for the disabling effect of article III, section 19. Certainly, it does not appear to serve the purpose intended by the framers: to advance the doctrine of separation of powers.

Article III, section 19 provides:

No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person *holding* a lucrative office under the United States, or this State, or any foreign government shall during the term to which he is elected or appointed, be eligible to the Legislature.

TEX. CONST. art. III, § 19 (emphasis added).

The express language of this provision of the constitution [6] applies only to persons "holding a lucrative office." And, although Relator Wentworth concedes he once *held* a lucrative office, at the time he was determined to be disqualified by the Chairman of the Republican Party of Texas, Fred Meyer, he was *not holding* a lucrative office—he had resigned that office. Thus, regardless of the true meaning of "during the term to which he is elected or appointed," the constitutional prohibition on its face applies only to "any person *holding* a lucrative office," which Wentworth plainly is not.[7]

---

**6.** In constitutional construction, "we rely heavily on the literal text." *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989).

**7.** Furthermore, regardless of Relator's resignation of the office of regent, when he was sworn in to his first of three terms as a state representative, he vacated that office by operation of article XVI, section 40 of the Texas Constitution. That provision states in pertinent part:

No one shall hold or exercise at the same time, more than one Civil Office of emolument [inapplicable exceptions omitted].
TEX. CONST. art. XVI, § 40.
Article XVI, section 40 has been construed, by this court and others, to mean that as a general rule, when the holder of one office accepts and qualifies for a second, he, by operation of law, is considered to have automatically relinquished the first office. *See Keel v. Railroad Comm'n of Texas*, 107 S.W.2d 439, 440 (Tex.Civ.App.—Aus-

In *Lee v. Daniels*[8], a case we overrule today, former Bexar County Commissioner Sam Jorrie was disqualified as a candidate for the state legislature. He sought a writ of mandamus to compel the Chairman of Bexar County Democratic Party, John Daniels, to reinstate him on the ballot. Jorrie argued that article III, section 19 of the constitution did not make him ineligible because he had resigned the office of county commissioner, and thus no longer was "holding a lucrative office." 377 S.W.2d at 619. That argument was rejected by a divided supreme court.

It is significant to note that in denying Jorrie a place on the ballot, the court relied on no Texas case, statute, or constitutional provision, other than *Kirk*, which concerned a district attorney *who had not yet resigned*, in holding that "it is the term that controls." *Id.* Contrary to the unsubstantiated assertion by the court in *Lee* that article III, section 19 is clear and unambiguous, it is demonstrably susceptible to two distinctly different meanings: it could mean that only current officeholders are ineligible for the legislature during their term of office; or it could mean that both current and past officeholders are ineligible for the duration of their terms. Under one construction, then, article III, section 19 does not bar Relator Wentworth's candidacy for the state senate; under the second construction, article III, section 19, applied to the facts of this case, bars Wentworth's candidacy.

Under circumstances like these, however, there can be no doubt that we are obligated to choose a construction of article III, section 19 that favors eligibility: first, because we have ourselves acknowledged a strict rule of construction in candidate-qualification cases, *Brown v. Meyer*, 787 S.W.2d 42 (Tex.1990); and second, because the alternative construction fails to serve the purpose of the framers of our constitution and lacks a rational basis.[9] For these reasons, I conclude that Relator Wentworth is not disqualified by his previous office of regent to be a candidate for the state senate.[10]

Accordingly, I concur in the court's judgment, conditionally granting the writ of mandamus.

HECHT, J., joins in this concurring opinion.

tin 1937, writ ref'd) (citing *Martin v. Grandview Indep. Sch. Dist.*, 266 S.W. 607, 610 (Tex.Civ. App.—Waco 1924, writ ref'd)); *Kugle v. Glen Rose Indep. Sch. Dist.*, 50 S.W.2d 375, 376 (Tex. Civ.App.—Waco 1932), aff'd, *Pruitt v. Glen Rose Indep. Sch. Dist.*, 126 Tex. 45, 84 S.W.2d 1004, 1006 (1935); *Odem v. Sinton Indep. Sch. Dist.*, 234 S.W. 1090, 1092 (1921); *San Antonio A.P. Ry. Co. v. Blair*, 108 Tex. 434, 196 S.W. 1153, 1183 (1917); *Alsup v. Jordan*, 69 Tex. 300, 6 S.W. 831, 832 (1887); *State v. Brinkerhoff*, 66 Tex. 45, 17 S.W. 109, 110 (1886); see also Frank W. Hubert, Jr., *Constitutional Restraints on Dual Officeholding and Dual Employment in Texas— A Proposed Amendment*, 43 Tex.L.Rev. 943, 944 (1965) ("When an incumbent is elected or appointed to a second office of profit, he may elect to hold either office, but once he qualifies for the second office, he is deemed to have made his election and the first office is ipso facto vacated.").

Unquestionably, it is our obligation to construe together all constitutional provisions relating to the same subject matter, and, if possible, to give effect to each. *See Vinson v. Burgess*, 773 S.W.2d 263, 265 (Tex.1989) (citing *Collinsworth County v. Allred*, 120 Tex. 473, 40 S.W.2d 13 (1931)). Therefore, Relator not only resigned the office of regent before he was disqualified by Respondent Meyer, by virtue of article XVI, section 40 of our constitution, he vacated that office by operation of law; in either event, he thereafter no longer held the office of regent.

8. Reexamination of the rule in *Lee* is especially appropriate in this case of constitutional construction. *See Payne v. Tennessee*, —— U.S. ——, —— – ——, 111 S.Ct. 2597, 2609–2611, 115 L.Ed.2d 720 (1991) (observing that reexamination of constitutional decisions is appropriate when "correction through legislative action is practically impossible"); *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 546–547, 105 S.Ct. 1005, 1015, 83 L.Ed.2d 1016 (1985).

9. I agree with JUSTICE HECHT that we should adopt a reasonable construction of our own constitution in a manner that does not violate the Equal Protection Clause of the federal constitution.

10. We need not reach Relator Wentworth's federal equal protection claims because we find him entitled to the writ under the terms of the Texas Constitution. *See Davenport v. Garcia*, 834 S.W.2d 4, 25 (1992).

GAMMAGE, Justice, concurring.

I concur in the court's judgment conditionally issuing the writ of mandamus to certify Wentworth's name for the ballot. I disagree with the plurality's rationale for this action, however, because in my view Wentworth never held a "lucrative" office under the Constitution and the prohibition in question never properly applied to him. The plurality needlessly engages in legal gymnastics and stretches mightily to construe "term" of office as being synonymous with "holding" office.

The plurality opinion attempts to avoid the appearance of convoluted reasoning by largely ignoring this court's own most recent precedent—*Dawkins v. Meyer*, 825 S.W.2d 444 (Tex.1992). The opinion cites *Dawkins* for the "purpose" of the provision, and purports to distinguish it by the irrelevant fact that Dawkins had not resigned when she first filed her petition, but fails to discuss its fundamental inconsistency with today's decision. *See* 839 S.W.2d at 767, 768. The opinion hinges its discussion on irrelevant "interim" events occurring since Wentworth's resignation from the Board, not on law or lucid and reasonably-defined constitutional terminology.

As a member of the Board of Regents of the Texas State University System, Wentworth was entitled to receive per diem compensation[1] of thirty dollars for meetings attended. During the fourteen months he held the position, he attended eight Board meetings for which he was compensated a total of $240.00 in per diem.

As in *Dawkins*, Wentworth's Board position was unsalaried[2] and did not involve actual day-to-day control. The Board met only a few times per year. Wentworth was a citizen-volunteer contributing service on a part-time basis, entitling him to only the specified nominal per diem and partial reimbursement of expenses. Wentworth did not hold a "lucrative" office within the meaning of the constitutional provision. *See Dawkins v. Meyer*, 825 S.W.2d 444, 455–56 (Tex.1992) (Gammage, J., dissenting).

In my *Dawkins* dissent I suggested that *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), and *Kirk v. Gordon*, 376 S.W.2d 560 (Tex. 1964), should be overruled. Upon further reflection, I generally agree with the reasoning of Part I-A of Chief Justice Phillips's dissent, and with similar reasoning in Justice Doggett's dissent. The constitutional convention that produced article III, section 19, changed the provision from "while a member" to the language "during the term for which" elected or appointed. This reflects a clear intent to expand the scope of disqualification and make the prohibition more restrictive. We may subjectively perceive this as an unreasonable prohibition, but it is nonetheless an unequivocal one.

I likewise generally agree with part I-B of Chief Justice Phillips's dissent, and similar reasoning in Justice Doggett's dissent, that whether the overlap is "de minimis" is immaterial. The voters specifically amended article III, section 18, to allow for a de minimis overlap in terms. The people did not amend section 19, which still contains no de minimis exception.

I nevertheless concur in the judgment of the plurality because Wentworth is clearly not barred by the provision: as a member of the Board he occupied no "lucrative" office within the meaning of the constitutional prohibition. It is unnecessary to reach equal protection or other issues.

I concur in the court's judgment.

PHILLIPS, Chief Justice, dissenting.

I believe that Article III, Section 19 bars a holder of a lucrative office from running

---

1. Respondents contend that Wentworth "stipulated" the position was "lucrative." Parties may stipulate facts, but not legal conclusions. *Reynolds v. McMan Oil & Gas Co.*, 11 S.W.2d 778, 785–86 (Tex.Comm'n App.1928, holding approved), *rehearing denied*, 14 S.W.2d 819 (Tex. Comm'n App.1929). Wentworth did not contest the facts that he was statutorily entitled to $30 per diem for attendance, and that in the fourteen months he served as a board member he attended a total of 8 meetings for which he received a total of $240.

2. Wentworth was statutorily entitled to "per diem payment as provided by the legislature" and to "be reimbursed for the actual expenses incurred by" him as a Board member. TEX.EDUC. CODE ANN. § 95.04 (1991).

for the legislature during the entire "term" for which he or she is appointed or elected, not merely for that portion of the term actually served. I therefore respectfully dissent.

I

A

The constitutional provision at issue states as follows:

No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the Legislature.

Tex. Const. art. III, § 19. Of particular importance here is the language "during the term for which he is elected or appointed...." The Court concludes that the "term" for which an officeholder is appointed ends when he or she resigns. I believe that this language refers to the entire term of the appointment, whether or not the officeholder serves the full term.

Wentworth was appointed to a six-year term on the Board of Regents of the Texas State University System. Wentworth's resignation did not bring an end to this term. When a public officer resigns, dies or is otherwise unable to serve, a successor is elected or appointed to fill the *unexpired portion* of the term. For example, our Constitution elsewhere provides:

In case of a vacancy in the office of the Chief Justice or any Justice of the Supreme Court, the Governor shall fill the vacancy until the next general election for state officers, and at such general election the vacancy for the *unexpired term* shall be filled by election by the qualified voters of the state....

Tex. Const. art. V, § 2 (emphasis added). Similarly, the Texas Election Code sets forth procedures for filling the "unexpired term" of a vacant state office. *See* Tex.

Elec.Code §§ 202.002–202.007. A "term," therefore, refers to the length of time the officeholder is elected or appointed to serve, not to the actual length of service.

As Justices Gonzalez, Hecht and Cornyn point out in their concurring opinions, there is some ambiguity on the face of Section 19 because it applies in the first instance to persons "holding" lucrative office. If the officer has resigned, he or she is no longer "holding" office and arguably does not fall under the restriction. Justice Hecht goes on to suggest that, under this interpretation, the phrase "during the term for which he is elected or appointed" is not surplusage because it can interpreted as a *limitation* on the restriction; i.e., clarification that the restriction does not apply to officers who are holding over in office beyond their terms, awaiting qualification of their successors.

If we were construing Section 19 in a vacuum, I might be inclined to resolve this ambiguity in favor of eligibility. However, this Court has twice interpreted this provision as precluding a lucrative officeholder from serving in the legislature for the entire term of the office, even if he or she resigns before its expiration. *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964); *Kirk v. Gordon*, 376 S.W.2d 560 (Tex.1964). The history of Section 19, as well as Section 18 preceding it, persuade me that these decisions were correct and should not be overruled.

As originally drafted by the Legislative Committee of the 1875 Constitutional Convention, Section 19 provided as follows:

No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States or this State, or any foreign government, shall be eligible to the Legislature.

*Journal of the Constitutional Convention of the State of Texas, 1875* 156 (1875) [hereinafter *Journal*]. This draft in relevant respects matched the restriction contained in earlier Constitutions.[1] Thus, the

---

1. Tex. Const. art. III, § 30 (1869); Tex. Const. art. III, § 24 (1866); Tex. Const. art. III, § 25 (1861); Tex. Const. art. III, § 25 (1845).

Committee draft, like the earlier Constitutions, disqualified the designated officeholders from legislative candidacy only while holding office, not for their entire term. On the floor of the Convention, however, delegate J.B. Murphy of Nueces County moved to amend the section by inserting after the word "shall" the phrase "during the term for which he is elected or appointed." *Journal* at 210. This change was adopted. *Id.*

The wording of Murphy's amendment was almost identical to language in the Legislative Committee's draft of the preceding provision of the Constitution, Section 18, which provided:

> No senator or representative shall, *during the term for which he may be elected*, be eligible to any civil office of profit under this State, which shall have been created, or the emoluments of which may have been increased during such term; no member of either house shall, *during the term for which he is elected*, be eligible to any office or place, the appointment to which may be made, in whole or in part, by either branch of the Legislature....

*Journal* at 156 (emphasis added). This language was adopted without change and remains in effect today. Tex. Const. art. III, § 18. Thus, the temporal restriction of Section 18 ("during the term for which he may be elected") was added to Section 19 in almost identical form.

Clearly, in Section 18 the meaning of the phrase "during the term for which he may be elected" is unambiguous. The purpose of that section is to prevent a legislator from voting to create an office or make an office more lucrative, then resigning his or her legislative seat to accept that office. *See* 1 George D. Braden, et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 132–34 (1977). To accomplish that purpose, the "during the term" language must encompass the legislator's entire term, not just the portion served. *See generally* Tex. Const. art. III, § 18, interp. commentary (Vernon 1984) ("The language is designed to prevent legislators from resigning to take state offices which have been created, or the emoluments of which may have been increased during their term of office.").

By using virtually identical words in Sections 18 and 19, I believe that the framers intended the same result. *Cf. Boriack v. Boriack*, 541 S.W.2d 237, 240 (Tex.Civ. App.—Corpus Christi 1976, writ dism'd) (a word or phrase used in different parts of a statute should be interpreted the same throughout); *Greenwood v. City of El Paso*, 186 S.W.2d 1015, 1017 (Tex.Civ. App.—El Paso 1945, no writ) (same).[2]

Texas is apparently the only state that bars officeholders from the legislature "during the term" of the office. Other states extend the restriction only to persons currently "holding" office, as did Texas prior to 1876.[3] However, many other states impose restrictions similar to Article III, Section 18, limiting a legislator's ability to hold other office during the term for which the legislator was elected.[4] Many of

---

**2.** The fact that Section 19 applies to persons "holding" office does not distinguish it from Section 18. The ambiguity which the word "holding" arguably creates in Section 19 also exists in Section 18, which applies in the first instance to "senators" and "representatives". It could be argued that a legislator is no longer a senator or representative after resigning office.

**3.** *See* Ariz. Const. art. IV, Pt. 1, § 1(2), Pt. 2, § 4; Ark. Const. art. V, § 7; Colo. Const. art. V, § 8; Conn. Const. art. III, § 11; Del. Const. art. II, § 14; Fla. Const. art. II, § 5; Ga. Const. art. III, § 2, para. IV(b); Iowa Const. art. III, § 22; Me. Const. art. IV, Pt. 3, § 11; Md. Const. art. III, § 10, 11; Mass. Const. amend. art. VIII; Mich. Const. art. IV, § 8; Mo. Const. art. III, § 12; Mont. Const. art. V, § 9; Neb. Const. art. III,

§ 9; Nev. Const. art. IV, § 9; N.J. Const. art. IV, § V, para. 4; Okla. Const. art. V, § 18; Pa. Const. art. II, § 6; R.I. Const. art. III, § 6; S.C. Const. art. III, § 24; S.D. Const. art. III, § 3; Tenn. Const. art. II, § 26; Utah Const. art. VI, § 6; Vt. Const. ch. II, § 54; Va. Const. art. IV, § 4; Wash. Const. art. II, § 14; W.Va. *Const.* art. VI, § 13; Wis. Const. art. IV, § 13; Wyo. Const. art. III, § 8.

**4.** *See* Ala Const. art. IV, § 59; Alaska Const. art. II, § 5; Ariz. Const. art. IV, Pt. 1, § 1(2), Pt. 2 § 5; Ark. Const. art. V, § 10; Cal. Const. art. IV, § 13; Conn. Const. art. III, § 11; Del. Const. art. II, § 14; Haw. Const. art. III, § 8; Ill. Const. art. IV, § 2(e); Ind. Const. art. IV, § 30; Iowa Const. art. III, § 21; Ky. Const. § 44; Me. Const. art. IV, Pt. 3, § 10; Miss. Const. art. IV,

these provisions contain language virtually identical to the language at issue in the present case. Most courts have construed this language as referring to the legislator's entire term, regardless whether he or she resigns. *See*, e.g., *Chenoweth v. Chambers*, 33 Cal.App. 104, 164 P. 428 (1917); *In re Advisory Opinion to the Governor*, 94 Fla. 620, 113 So. 913 (1927); *Rowe v. Tuck*, 149 Ga. 88, 99 S.E. 303 (1919); *In re Opinions of the Justices*, 95 Me. 564, 51 A. 224 (1901); *Wachter v. McEvoy*, 125 Md. 399, 93 A. 987 (1915); *Richardson v. Hare*, 381 Mich. 304, 160 N.W.2d 883 (1968); *State ex rel. Childs v. Sutton*, 63 Minn. 147, 65 N.W. 262 (1895). *But see Rugg v. Town Clerk of Arlington*, 364 Mass. 264, 303 N.E.2d 723 (1973). These decisions are consistent with our holdings in *Lee* and *Kirk*, and I would follow the same rule here.

### B

Wentworth's Board of Regents term overlaps his potential Senate term by only 19 days. Wentworth argues that this overlap is de minimis and should be ignored.

Tex. Const. art. III, § 18 was amended in 1968 to allow for a de minimis term overlap when legislators move to some other civil office. Wentworth argues that by amending Section 18, the State has recognized that a de minimis overlapping of terms is not against the public interest. However, the people adopted a de minimis exception only for Section 18, not Section 19. Even if we accept Wentworth's argument that the policy rationale underlying the change in Section 18 would apply with equal force to Section 19, we cannot judicially amend the plain language of the Constitution based on policy reasons.

### II

Wentworth next argues that if my interpretation of Section 19 is correct, its application in this case violates his right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution. I disagree.

The United States Supreme Court has previously upheld Article III, Section 19 against an equal protection attack. *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). *Clements* involved a justice of the peace who desired to run for the legislature before the expiration of his judicial term. A four-justice plurality [5] held that Section 19 created only "insignificant interference with access to the ballot," 457 U.S. at 968, 102 S.Ct. 2836, 73 L.Ed.2d 508, and therefore "need only rest on a rational predicate in order to survive a challenge under the Equal Protection Clause." *Id.* The plurality found that rational predicate, noting that the restriction 1) prevented officeholders from abusing or neglecting their office while campaigning for the legislature, and 2) encouraged officeholders to serve their full terms, thereby reducing the problems caused by interim elections and appointments. *Id.*

Justice Hecht notes that "[o]nly a plurality" of the Supreme Court found a rational purpose for my construction of Section 19. 839 S.W.2d at 775. This, however, does not weaken the effect of *Clements*. The fifth justice joining in the judgment, Justice Stevens, concluded that the equal protection clause was not even implicated because "there is [no] federal interest in requiring a State to define the benefits and burdens of different elective state offices in any particular manner." 457 U.S. at 974, 102 S.Ct. at 2849 (Stevens, J., concurring). He thus would have upheld the provision without *any showing* of a rational basis for the classification. *Id.* at 974–75, 102 S.Ct. at 2849.

The plurality recognized that preventing abuse of office was "especially important

---

§ 45; Mo. Const. art. III, § 12; Mont. Const. art. V, § 9; Nev. Const. art. IV, § 8; N.J. Const. art. IV, § V, para. 1; N.M. Const. art. IV, § 28; N.Y. Const. art. III, § 7; N.D. Const. art. IV, § 6; Ohio Const. art. II, § 4; Okla. Const. art. V, § 23; Pa. Const. art. II, § 6; S.D. Const. art. III, § 12; Utah Const. art. VI, § 7; W.Va. Const. art.

VI, § 15; Wis. Const. art. IV, § 12; Wyo. Const. art. III, § 8.

5. Justice Rehnquist delivered the plurality opinion, joined by Chief Justice Burger and Justices Powell and O'Connor.

with regard to judicial officers," *id.*, pointing out that "[t]he State's particular interest in maintaining the integrity of the judicial system could support § 19, even if such a restriction could not survive constitutional scrutiny with regard to any other officeholder." *Id.* at 968 n. 5, 102 S.Ct. at 2846 n. 5. Based on these comments, Wentworth seeks to limit the holding of *Clements* to judicial officers, thereby distinguishing the present case.

I do not read *Clements* so narrowly. The State has a legitimate interest in preventing abuse and neglect by all its officers, not just judges. Further, the second rationale provided by the plurality, encouraging officeholders to serve out their terms, applies with at least equal force to university regents as it does to justices of the peace. I would therefore hold that Section 19 does not violate Wentworth's equal protection rights.

### III

#### A

Since resigning his Board of Regents position, Wentworth has been elected three times to the Texas House of Representatives. Wentworth therefore argues that this present challenge to his eligibility for the legislature is barred by a legislative version of res judicata.

Tex. Const. art. III, § 8 provides:

Each House shall be the judge of the qualifications and election of its own members; but contested elections shall be determined in such manner as shall be provided by law.

Wentworth contends that the House of Representatives' decision to seat him for two terms was "judicial" in nature and precludes this present attack on his eligibility for the legislature.

First, it must be noted that Section 8 does not deprive this Court of jurisdiction to determine a candidate's qualifications. *Kirk v. Gordon, supra.* Second, even if the House's decision to seat Wentworth can be called "judicial," I do not believe that Wentworth's estoppel argument is properly characterized as a res judicata challenge.

Res judicata precludes a party from relitigating the same cause of action. *Gracia v. R.C. Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984). The "cause of action" in this mandamus proceeding concerns Wentworth's eligibility to be the Republican candidate for District 26 of the Texas Senate on the 1992 general election ballot. No tribunal, judicial or legislative, has previously addressed this dispute, except the court of appeals below. Wentworth's estoppel argument, rather than going to his entire cause of action, concerns a specific legal issue: the interpretation of Article III, Section 19. Wentworth's argument, if anything, is in the nature of a collateral estoppel challenge.

Collateral estoppel requires, among other things, actual litigation of the issue. *See Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 680 (Tex.1982). There is no indication in the record that the issue of Wentworth's alleged ineligibility under Section 19 was ever actually considered by the House of Representatives. Further, collateral estoppel only precludes persons who were parties to the prior action, or those in privity with them. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex.1971). Neither the Senate nor Respondent Meyer were parties to the House's decision to seat Wentworth, and thus they cannot be estopped by that decision.

#### B

Justice Mauzy would hold that Meyer is estopped from declaring Wentworth ineligible because the Chairman of the Republican Party has on several previous occasions—under the same circumstances—certified Wentworth as eligible for the legislature. Justice Mauzy's approach differs from Wentworth's estoppel argument in that Wentworth focuses on the action of the House of Representatives in seating him, while Justice Mauzy focuses on the action of the Republican Party Chairman in certifying Wentworth.

Justice Mauzy does not contend that Wentworth somehow detrimentally relied on the Republican Party Chairman's failure to earlier raise Article III, Section 19. It

seems, therefore, that Justice Mauzy's theory more closely resembles "waiver" than "estoppel." *See Tex–Craft Builders v. Allied Construction of Houston, Inc.,* 465 S.W.2d 786, 793 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.) (waiver depends solely on the conduct of the party holding the right, while estoppel depends on what that party has caused the adversary to do). "Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration and Production Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987). There is no indication in the record that the Republican Party Chairman, with knowledge of the relevant facts, consciously decided not to raise the Section 19 issue in earlier elections. I do not believe, therefore, that an intentional waiver can be inferred. Furthermore, it would manifestly be against public policy to allow a candidate to circumvent a constitutional eligibility requirement by applying the doctrine of waiver against an election official.

## IV –

We recently reaffirmed that an office is "lucrative" within the meaning of Article III, Section 19 if the recipient receives any compensation, no matter how meager. *Dawkins v. Meyer, supra.* Justice Gammage argues that we should revisit this issue and hold that Wentworth's Board of Regents position was not lucrative and therefore does not bar his run for the legislature. Wentworth, however, does not raise this issue, and I would not revisit the matter on our own motion.

## V

For the reasons stated in the plurality opinion and the concurring opinions of Justice Hecht and Justice Cornyn, the Court's decision today, although in my opinion incorrect, is not inconsistent with our recent holding in *Dawkins v. Meyer.*

## CONCLUSION

For the reasons discussed above, I would hold that Wentworth is ineligible for election to the Texas Senate since the term which he seeks would overlap with his appointive term to the Board of Regents of the Texas State University System.

DOGGETT, Justice, dissenting.

Today's tangled web of opinions is the product not of legal complexity, but of the unsuccessful attempt to explain away recent inconsistencies. Six months ago this court held that article III, section 19 of the Texas Constitution barred the candidacy of Patti Lou Dawkins. I joined the writing of Justice Cornyn with Justices Phillips, Cook and Hecht, not because the ineligibility provision represented the best public policy, but because the issue was fully resolved by unambiguous constitutional language recited in well understood prior opinions of this court. Each of these four now feels compelled to offer a separate written explanation for today's conflicting constitutional interpretation.

Today we learn how ephemeral has been the commitment to our previous writing that in constitutional interpretation:

> We are not free, by implementing a rule of construction, to "stretch" the meaning of unambiguous words to achieve a result we might consider to be more desirable, or even better public policy.

*Dawkins v. Meyer,* 825 S.W.2d 444, 448 (Tex.1992). During these six months, the Constitution has not been amended and the law has not changed. The respect for both the language of our state charter and this court's precedent during a February frost has evaporated in the August heat. With good reason, one can only wonder why Patti Lou Dawkins was not favored with such fair weather.

The issue of whether resignation of a prior office removes the candidacy restrictions for the Legislature set forth in article III, section 19 of the Texas Constitution has already been clearly decided. After serving more than three of the four years of his term as county commissioner, Sam Jorrie resigned in order to run for state representative. Making precisely the same argument presented today, he contended that the constitutional bar extending for "the term for which he is elected or ap-

pointed" applied only to his *tenure* of office, the actual period of service, and not the entire term. This court flatly rejected that argument:

> We ... *hold that resignation at whatever time will not suffice* to make eligible to the Legislature any person who has qualified for an elective or appointive term to a lucrative office under the State, the term of which does not expire until after the term of the legislator begins.... Since it is the term which controls, it makes no material difference whether the holder of the office resigns the day after he actually begins holding that office, the day of filing for the office of legislator, or the day before the election at which time the term of office of members of the Legislature begins.

*Lee v. Daniels*, 377 S.W.2d 618, 619 (Tex. 1964) (emphasis added). The two month overlap in the two offices was held to preclude eligibility. Similarly, declaring the language of article III, section 19 "plain and unambiguous," this court has held that the tender of a future resignation is ineffective to remove its candidacy restrictions. *Kirk v. Gordon*, 376 S.W.2d 560, 562 (Tex. 1964).

*Lee* and *Kirk* were reaffirmed to bar the candidacy of Patti Lou Dawkins, who was willing to resign her appointment as a member of a state board but acknowledged that under these two rulings such action would be of no avail. *See Dawkins*, 825 S.W.2d at 453 (Gonzalez, J., dissenting).[1] None of today's many writings commands a majority nor provides a sound reason for

why the constitutional barrier should remain firm for Dawkins but crumble for Wentworth.[2]

The very authorities which this court found so persuasive in *Lee* are now casually dismissed as not "involv[ing] either provisions or situations which mirror those we consider today." 839 S.W.2d at 768. Those opinions of the highest courts in three states remain instructive. In *Rowe v. Tuck*, 149 Ga. 88, 99 S.E. 303 (1919), when considering whether resignation would remove the candidacy bar of a statute precluding eligibility for another position of a court recorder "during the term of his office," the court found use of the word "term" controlling:

> It may be that resignation ends the tenure, but it does not end the term. The term is fixed by statute.

*Id.* 99 S.E. at 305. Similarly, in examining a constitutional restriction on a legislative incumbent "during the time for which he is elected," the court in *State ex rel. Childs v. Sutton*, 63 Minn. 147, 65 N.W. 262 (1895), with brevity and clarity, held that:

> He was not merely prohibited from holding any office during the time which he might serve, but during the time for which he was elected. The difference is obvious, and the language too sweeping to be disregarded. The respondent could not nullify the constitutional prohibitory clause, "during the time for which he is elected," by his resignation of the office of representative.

---

1. Justice Gonzalez understandably relies on his recent writing in *Dawkins*. While I disagree with his reading of the constitution, at least he has maintained some consistency.

2. Both the plurality and Justice Cornyn highlight the fact that *Dawkins* is not being overruled, 839 S.W.2d at 768 and 776; Justice Cornyn further insists that *Lee* and *Kirk* were not reaffirmed in *Dawkins*. *Id.* at 778. With those cases relied upon as controlling precedent six months ago now overruled, what can be left of *Dawkins*? When a structure's foundation is removed, how can it stand?

Apparently conceding that little remains of the *Dawkins* decision, at least Justice Hecht recognizes that today's new interpretation

"would almost certainly have affected the arguments made in *Dawkins* earlier this year." *Id.* at 776. He nonetheless defends the inconsistencies on grounds that Dawkins had not resigned at the time she sought mandamus relief. *Id.*

Justice Phillips feels compelled to defend those whose departure from *Dawkins* necessitates his writing. He essentially concludes that the plurality's invitation to further litigation on the question of when a resignation must be tendered removes any inconsistencies between the treatment of Wentworth and Dawkins. I strongly disagree. For Dawkins, the literal text of the constitution was adhered to, our prior decisions reaffirmed. Today those same precedents are overruled, and the literal text of article III, section 19 disregarded.

*Id.* 65 N.W. at 263. *Baskin v. State of Oklahoma,* 107 Okl. 272, 232 P. 388 (1925), also interpreted the phrase "during the term for which he had been elected" to encompass the full term, whether or not a resignation had been tendered:

> To us the language is plain and unambiguous, and the general rule of law is, when a statute or Constitution is plain and unambiguous, the court is not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom.... This language is too sweeping and too plain to be disregarded.
>
> ... It is not within the province of the court to read an exception [for resignation] in the Constitution which the framers thereof did not see fit to enact therein.

*Id.* 232 P. at 389.

While only Texas may constitutionally restrict certain officeholders from running for the legislature, the language at issue today is by no means unique. The phrase "during the term for which he was elected" is found in article III, section 18 of the Texas Constitution, in article I, section 6 of the United States Constitution, and in most other state constitutions, as well as many state statutes and city charters. A compendium of relevant cases, cited by this court in *Lee,* appropriately concluded that:

> In cases where the Constitution or a statute provides in specific terms that a person holding a certain office shall not be eligible, during the term for which he

was elected or appointed to said office, to certain other offices, or any other office, *the courts invariably hold that such ineligibility exists during the entire period for which the person was elected or appointed, and is not affected by resignation of the first office.*

Annotation, *Resignation of One Office as Affecting Eligibility to Another Office During Term of Former Office,* 5 A.L.R. 117, 120–21 (1920) (emphasis added). The plurality ignores the consistent interpretation of this language as clearly encompassing the officeholder's entire term, not his tenure.[3]

*Lee, Kirk, Dawkins,* and the authorities upon which they relied should control the disposition of this case. In the rejection of this prior constitutional interpretation, which it euphemistically calls a "reevaluat[ion]," 839 S.W.2d at 768, the plurality offers very little new analysis.[4] The proper constitutional interpretative method is now well-established:

> In construing [a provision of the Texas Constitution], we consider "the intent of the people who adopted it." In determining that intent, "the history of the times out of which it grew and to which it may be rationally supposed to have direct relationship, the evils intended to be remedied and the good to be accomplished, are proper subjects of the inquiry." However, because of the difficulties inherent in determining the intent of voters over a century ago, we rely heavily on the literal text. We seek its meaning with the

---

**3.** A number of other cases consider similar language and conclude that resignation does not remove the bar to eligibility. *See, e.g., Chenoworth v. Chambers,* 33 Cal.App. 104, 164 P. 428, 430 (Cal.Dist.Ct.App.1917) ("When we speak of the 'term' for which an officer has been elected, we mean the period of time fixed by statute during which he may serve, and not to the time he may happen to serve."); *Advisory Opinion to the Governor,* 94 Fla. 620, 113 So. 913, 915 (1927); *Crovatt v. Mason,* 101 Ga. 246, 28 S.E. 891, 895 (1897) ("resignation could not affect the time for which he was chosen"); *Wachter v. McEvoy,* 125 Md. 399, 93 A. 987, 990 (1915) ("The term was not ended by ... resignation.... If the Legislature had intended to limit the disqualification to the time of actual service or to the period of actual incumbency, it

would have so stated...."); *Richardson v. Hare,* 381 Mich. 304, 160 N.W.2d 883, 888 (1968) (per curiam) ("resignation ... will not operate to create eligibility and counteract the prohibition"); *Forman v. Bostwick,* 139 A.D. 333, 123 N.Y.S. 1048 (1910); *see also Meeks v. Tallahatchie County,* 513 So.2d 563, 567 (Miss.1987) ("We do not read the statute to allow Meeks to shorten the period of his disqualification by resigning [his] office...."). The only decision to the contrary is the one upon which Justice Hecht bases his writing. *Rugg v. Town Clerk of Arlington,* 364 Mass. 264, 303 N.E.2d 723 (1973).

**4.** Defending reexamination of *Lee,* 839 S.W.2d at 779 n. 8, Justice Cornyn does not indicate compelling reasons to engage in that process every six months.

understanding that the Constitution was ratified to function as an organic document to govern society and institutions as they evolve through time.

*Davenport v. Garcia,* 834 S.W.2d 4, 19 (Tex.1992, orig. proceeding) (quoting *Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989) (citations omitted)). While generally paraphrasing this approach, the plurality proceeds to disregard it.[5]

The origin of the particular language at issue in article III, section 19 is summarily dismissed with the statement that "an adequate history of the constitutional convention" is "absent." 839 S.W.2d at 768. While the applicable history may be sparse, it is of importance. The phrase "during the term for which he is elected or appointed" was not contained in the 1869 Constitution, which provided:

> No judge of any court of law or equity, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall be eligible to the Legislature.

Tex. Const. of 1869, art. III, § 30. The reference to the officeholder's term was added as a floor amendment during the 1875 Constitutional Convention. Journal of the Constitutional Convention 210 (1875); *Constitutional Proceedings: Nineteenth Day,* Daily Democratic Statesman (Austin, Texas), Sept. 28, 1875, at 1. The provision, since 1875, has read:

> No judge of any court of law or equity, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall *during the term for which he is elected or appointed,* be eligible to the Legislature.

Tex. Const. art. III, § 19 (emphasis added).

While no record of debate demonstrates the amendment's precise purpose, it has been described as "significant." 1 George D. Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis 135 (1977). It is an elementary principle of constitutional construction that the language used must be presumed to have been carefully selected. *See, e.g., Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.,* 479 S.W.2d 908, 912 (Tex.1972). We should not adopt an interpretation that renders a phrase meaningless or inoperative. *Hanson v. Jordan,* 145 Tex. 320, 323, 198 S.W.2d 262, 263 (1947).

Yet the plurality embarks on precisely such a course, interpreting "term" to define only the period of actual service in office until the time of resignation. Neither discussed nor distinguished is our prior determination that:

> In order to avoid confusion a clear distinction must be made between the phrase, "term of office" and an individual's tenure of office. The period of time designated as a term of office may not and often does not coincide with an individual's tenure of office.

*Spears v. Davis,* 398 S.W.2d 921, 926 (Tex. 1966). Additionally, in article III, section 19, "term" is modified by the phrase *"for which he is elected or appointed."* Clearly the intent of one appointing or voting to elect is to place another in office for a full term. Our decision in *Lee* correctly gives full effect to the literal text of the Constitution. *See* 1 Braden, *supra,* at 136 ("The majority [in *Lee*] ... [felt] duty bound to assign meaning to every phrase in the section, and probably the majority was right.").

Ordinarily, constitutional provisions are not read or construed in isolation. *Vinson v. Burgess,* 773 S.W.2d 263, 265 (Tex.1989). Of at least twenty-seven provisions in which our state charter uses the word "term," none suggests that the term ends on resignation. Indeed, some provide for filling "unexpired terms." *See, e.g.,* Tex.

---

**5.** Justice Hecht would depart even further from this court's interpretive method, ignoring what he recognizes to be the "common" and "ordinary" meaning of the constitutional text if any possible alternative construction can be conceived that would better serve perceived policy objectives.

Const. art. XVI, § 27. If "term" means "tenure," how can there ever be an unexpired term? Today's redefining of the word "term" injects chaos into consistent constitutional construction.

Further, the plurality fails to observe that the result of the 1875 amendment was to incorporate nearly identical language in two adjoining constitutional provisions. Article III, section 18 provides:

No Senator or Representative shall, *during the term for which he was elected,* be eligible to (1) any civil office of profit under this State which shall have been created, or the emoluments of which may have been increased, during such term, or (2) any office or place, the appointment to which may be made, in whole or in part, by either branch of the Legislature. . . .

The parallel phrases in sections 18 and 19 cannot reasonably be construed to have different meanings. If term means tenure, then section 18 is rendered meaningless and no longer prevents a legislator from resigning to seek the office which he or she has voted to create or expand. Under today's decision, candidates may now resign to run for any office, without regard to the prohibitions of either section 18 or 19.

In "reserv[ing] the issue when an officeholder must resign to avoid article III, section 19," 839 S.W.2d at 767 n. 1, the plurality invites another round of election year litigation. Finding Wentworth's resignation four years prior to the end of his appointed term sufficient to avoid the constitutional eligibility restriction, we are left to wonder what would happen if the resignation had been tendered with three years remaining, or with one year, six days, or ten months as in the case of Patti Lou Dawkins. Where does the Constitution

draw the line? Disregarded is our pronouncement of six months ago that:

We will not countenance a construction of our constitution that would so plainly generate uncertainty concerning the eligibility of legislative candidates. To hold otherwise would unnecessarily complicate the already difficult duties performed by election officials and unwittingly encourage additional litigation on this issue.

*Dawkins,* 825 S.W.2d at 450.

We have previously deferred to the people of Texas the task of making constitutional corrections through the amendment process:

[T]he power to change such a result by amending our constitution lies not in our hands, but in the hands of the sovereign people of the State of Texas.

*Dawkins,* 825 S.W.2d at 450. This court has similarly refused to engraft *de minimis* exceptions to eligibility requirements because of a concern that we would be exceeding our judicial powers:

Application of the rule of *de minimis non curat lex* would sacrifice the mandate of article V, section 2 of the constitution [setting forth judicial eligibility requirements] in favor of expediency.

*Sears v. Bayoud,* 786 S.W.2d 248, 250 (Tex. 1990, orig. proceeding). It is important to note that the restrictions imposed by article III, section 18, preventing qualified candidates from seeking office if the terms overlapped for even a few days, was cured by constitutional amendment.[6] Today, however, unlike six months ago in *Dawkins* and two years ago in *Sears,*[7] interpretation is substituted for constitutional amendment, with the power of the people arrogated to a plurality of the members of this court.[8]

6. The section was amended in 1968 to add a proviso to the first sentence: "the fact that the term of office of Senators and Representatives does not end precisely on the last day of December but extends a few days into January of the succeeding year shall be considered as de minimus, and the ineligibility herein created shall terminate on the last day of December of the last full calendar year of the term for which he was elected." Tex. Const. art. III, § 18; *see also* 1 Braden, *supra,* at 132.

7. The time periods considered in each of these cases are remarkably similar to that at issue today—one month in *Dawkins,* eleven days in *Sears,* and twenty-one days for Wentworth. Yet, in both prior cases, this court found the candidates ineligible.

8. Nor is today's constitutional revision mandated by a judicial rule of construction first announced eighty-eight years after the provision to be interpreted was adopted. *Willis v. Potts,* 377

While debate has occurred over the public policy underlying article III, section 19, there has until today been a rather clear understanding of its meaning. A study commission recommended its removal to our most recent constitutional convention:

> [New section 3(d)] has made a substantial change in Article III, Section 19 of the Constitution of 1876. The 1876 document does not allow an officeholder to resign and to run for the Legislature during the term for which that officeholder was elected or appointed. This prevents many elected officials of state and local government from running for the Legislature.

Texas Constitutional Revision Comm'n, A New Constitution for Texas: Text, Explanation, Commentary 79 (Nov.1973). This proposal was rejected, however, in a committee report that retained the language "during the term for which he is elected or appointed," with the explanation that:

> [New subsection (f)] prohibits certain appointed or elected officers from running for the legislature during the term for which they were appointed or elected. This provision is the same as Article III, Section 19, of the Constitution of 1876.... This subsection would prohibit those persons from running for the legislature during the term for which they were appointed or elected *whether or not* they resigned before running.

1 Texas Constitutional Convention, Official Journals, January 8, 1974–July 30, 1974, at 656, 659 (emphasis in original). Floor debate further indicated that resignation would not remove the candidacy bar. Texas Constitutional Convention, Official Proceedings, January 8, 1974–July 30, 1974, at 1115, 1334. The "during the term" limitation was retained in the final version.

Nor does the plurality consider the history of Article VII, section 16 under which the position for Wentworth's previous appointment was created. Adopted in 1928, that provision responded to an educational survey under the direction of one of the nation's leading educators, determining that:

> The personnel of the governing boards of higher institutions is a matter of the most serious consequence to the institutions themselves and in general to the development of higher education.... [T]hese [appointees] are shaping the State's policy relative to its most fundamental interest, not only for the present, but for years in the future.... [C]ertainly [appointees should] refuse to use such honors as a step to political preferment.

6 George A. Works, Texas Educational Survey Comm'n, Texas Educational Survey Report 346 (1925). This report further concluded:

> [I]t is too much to hope that members serving for short periods will be able to do any considerable amount of constructive service.... The people of the State must realize that the institution cannot render to the State the largest possible measure of service if membership on the board is regarded as a political office.... [T]his service [must engage] the attention and devotion of men of consequence and attainment who will not under any circumstances undertake any other public career.

8 *id.* at 238–39; *see also* Tex. Const. art. VII, § 16 (interp. commentary). Barring candidacy for the full term of the appointment is consistent with the objective of this companion provision.[9]

Ignoring the invaluable history of article III, section 19, and its unambiguous text, the plurality frames the sole issue as whether the asserted interpretation promotes its underlying purpose to "bolster[ ] the separation of powers within our state government." 839 S.W.2d at 767. Certainly "the evils intended to be remedied" are of importance in our constitutional inquiry. *Davenport*, 834 S.W.2d at 79. They do not,

---

S.W.2d 622, 623 (Tex.1964) (setting forth rule of strict construction against ineligibility).

**9.** In its discussion of the appropriate manner for filling unexpired terms, the report further

reflected an understanding that a term is a set period of time and not the length of actual service. 6 Works, *supra,* at 347.

however, provide a clear explanation, since the predecessor to article III, section 19 in the Constitution of 1869 also arguably sought to bolster the separation of powers. The general purpose cannot explain why the "during the term" clause was added in 1875. The objective remained the same, but the means of effectuating it was altered. In this situation, intent is not dispositive: "[B]ecause of the difficulties inherent in determining the intent of voters over a century ago, we rely heavily on the literal text." *Id.*

This court should interpret the Texas Constitution with respect for its text and history to give full effect to the will of the people. Because today's decision markedly veers from that path, I dissent.[10]

---

**10.** After argument in the court of appeals, Wentworth raised an additional issue that the eligibility restriction deprives him of equal protection under the United States Constitution. In *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), a similar challenge to article III, section 19 was rejected. While much in Justice Brennan's dissenting opinion in that case is persuasive, *id.* 457 U.S. at 976–90, 102 S.Ct. at 2850–57, 73 L.Ed. at 524–33, I accept *Clements* as determinative. With a state consti-

tutional provision at issue here, Wentworth chooses to urge no state equal protection violation. Were this not true, I would consider whether the broader language of Texas Constitution article I, section 3 affords him greater protection than the federal charter. *See Davenport v. Garcia,* 834 S.W.2d 4 (Tex.1992); *see also City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 293, 102 S.Ct. 1070, 1076, 71 L.Ed.2d 152 (1982).